McBRIDE *v.* SHANNON BROTHERS, INC.

4-4535

Opinion delivered March 1, 1937.

*James C. Hale* and *Trieber & Pope,* for appellants.

*Shafer & Gathings, Canada & Russell* and *W. G. Dinning,* for appellees.

GRIFFIN SMITH, C. J. This is the second appeal from a decree of foreclosure involving the same property under a mortgage of April 17, 1930.

On February 25, 1935, this court reversed and remanded a cause entitled Pope v. Shannon Bros. The appellant in that action, Lady P. Pope, in April, 1930, borrowed $8,000 from appellee and executed her note due two years after date, in evidence of the obligation. The security was a mortgage on 1,287 acres of land, situated near the town of West Memphis. Default in payment having occurred, there was a decree of foreclosure on December 20, 1932. Sale under the decree was on May 1, 1933, at which time the judgment, interest, and cost,

amounted to $11,790.44. Petition was filed to set the sale aside on account of inadequacy of price, financial depression, etc.

This court found that the decree of confirmation (April 21, 1934) was rendered on an adjourned day of the March term, in contravention of act 21 of 1933 which provides that "foreclosure decrees, and decrees confirming foreclosure sales, shall only be rendered during the first three days of the regular term of the court as fixed by law." Section 4 of act 21 reads as follows: "Before confirming a sale the court shall ascertain whether or not, on account of economic conditions, or the circumstances attending the sale, a fair price, with reference to the intrinsic value of the property, was obtained. If it is made to appear to the court that a better price could be obtained at a resale, or if any one agrees to bid a substantially higher amount at a resale, the court shall order a resale on such terms as the court may require." The opinion stated that the value of the property was substantially greater than the amount bid, and for this reason, and because of a failure to comply with act 21, the cause was reversed. *Pope* v. *Shannon Brothers,* 190 Ark. 441, 79 S. W. (2d) 278.

In March, 1935, a supplemental complaint was filed by Shannon Brothers, appellee herein, and on August 14, 1935, the court again decreed sale of the property. In the meantime delinquent taxes and improvement district betterments had been paid by appellee. Appellants were allowed until November 1, 1935, to pay. On December 2, 1935, the property was sold for debt, interest, and cost, amounting to $20,200. Claude McBride and James H. Pope, sons of the appellant, Lady P. Pope, made a bid of $25,100, while Shannon Bros. bid $25,000. The order was that the property be sold on a credit of three months with approved security. McBride and Pope tendered their bond, with Lady P. Pope and Katherine McBride as sureties, and as further security, Lady P. Pope and Katherine McBride pledged their interests in certain additional real property. The commissioner declined to accept the bid, requesting that the security be strength-

ened, and when this was not done the bid was rejected and the property again offered for sale. At this offering appellee bid the debt, interest, and costs, then $20,200, and was declared the purchaser.

On December 20, 1935, the four appellants, Claude McBride, Jas. H. Pope, Jr., Katherine McBride, and Lady P. Pope, filed exceptions to the report of sale, and the court made an order continuing the cause until the next regular day.

Claude McBride and James H. Pope, Jr., with their exceptions to the report of the commissioner and in support of contentions that they were *bona fide* purchasers, filed affidavits of Katherine McBride and Lady P. Pope, showing that Katherine McBride and Lady P. Pope were owners of real estate in Crittenden county, other than that sold by the commissioner, of the clear value of $32,-600. It was further alleged that the bond was still on file with the commissioner; that they desired to abide by the terms of the purchase; that the commissioner had no alternative but to accept the bond, and that they were entitled to a rule requiring acceptance. They further alleged that the bid of appellee was unfair, and proposed, if the court would order a resale, to bid $30,000.

The appellants, Katherine McBride and Lady P. Pope, identified three tracts of land, other than that mortgaged to appellee, which they owned, or in which they had equities of $32,600. Tract No. 1, half a mile from the city limits of West Memphis, contains 80 acres, is unincumbered, and is worth $10,000. Tract No. 2 adjoins Tract No. 1 on the west, contains 160 acres, is incumbered for $2,500, and is worth $20,000, with a net equity of $17,500. Tract No. 3 consists of a one-half interest in 160 acres, valued at $14,400, incumbered to the extent of $4,200, the equity being $5,100.

With respect to the value of land mortgaged to appellee, W. F. Skinner, a Memphis real estate agent, testified that "if it is worth anything, is worth about $40 an acre." If it should be cut up in five-acre tracts on the highway, it would sell for a higher price. Some of the land has timber on it. R. C. Brown, lawyer, of West

Memphis, placed the value at $50 per acre, or perhaps more. The immediate frontage on highway 70, two acres deep, should sell for $500 per acre. He thought there was half a mile on highway 70. Ben F. James believed the property well worth $75 an acre, "and some of it is worth as high as $1,000 per acre, on highway 70." Witness had sold lands immediately adjoining this tract on the west for $125 an acre, but this was before the war. J. H. Horton, of Memphis, "engaged in oil, gas, chickens, and eggs," has a contract with Mrs. Pope for one acre at $1,500. Would take three acres on either side from the north or south at $3,000. Has filling stations and is building five more. Thinks there are 400 acres of cleared land, with half a mile frontage on highway. Geo. M. Abernathy, of Memphis, real estate man, estimated the property to be worth $200 per acre as a whole. Had cash offer of $22,500 a little more than a year ago. About that time witness sold 200 acres on the highway at $42.50 per acre. It was half cleared and was "about five miles the other side of Lehi." Lehi is approximately seven miles from West Memphis. Lady P. Pope testified that she and her daughter, Katherine McBride, were joint owners of the tract in question, 1,287 acres, and that they owned other lands in Crittenden county, including that identified in the bond, and that the value of the property offered as security greatly exceeded the mortgage debt.

James H. Pope, Jr., testified as to his bid of $25,100. He had tried to borrow money to pay the note, and at one time got a loan of $17,500 on 160 acres—this from Abe Goldman. Witness had no money to pay into court "because he had no idea the court was going to ask if he was going to pay it." Was in and out of lawyer's office when depositions were taken, but did not remember being advised that if he would get up the money plaintiff would be willing to accept it and let his bid be confirmed. The man he intended to borrow from left the United States in January.

On behalf of appellee, John W. Scott testified that he had been engaged in buying and selling land in Crittenden county; had lived there 25 years, and knew the

Lady P. Pope property. A considerable portion is very old, flat land. Some is pretty fair buckshot land. There are about 325 acres in cultivation. Half a mile lies immediately along highway 70. Market value is $15 to $22.50 per acre—$22.50 would be a maximum. With frontage sold off, unless a full scheme of development was had, value of the remainder would be lowered as a whole. The full scheme of development would have to run two miles back. Three years ago, witness bought land nine miles south of this for $10 per acre, on highway 70—two miles west of Lehi. The land involved in this purchase was cleared, and resold for $30 per acre.

W. B. Rhodes, cashier of Bank of Marion, has lived in Crittenden county 26 years, and farms 7,000 to 8,000 acres. That part of the property along the bayou is fairly good, balance is low woodland. From a production standpoint the lands are not worth over $20 to $25 per acre. Does not know anything about value "for speculative purposes on basis of expansion of West Memphis." On a fair cash market, cultivated lands are worth $40 per acre and wood lands from $10 to $15, but "if it is a fact that the lands in a normal year would produce 300 bales of cotton, that would raise estimate to $60 per acre for cultivated area."

William Collins lives in West Memphis. Is in real estate business. Thinks cultivated area is about 350 acres. Land is thin. Taken as whole, it is worth about $20 per acre.

R. V. Wheeler, Crittenden county attorney, has lived in county 27 years. Is in abstract business and is familiar with land values. Considers property as a whole worth $20,000. The highest priced cotton land sold in Crittenden county within past two years brought $60 per acre. Reputation of the Pope land in Crittenden county as a farming proposition is bad.

Act 21 was passed in 1933 for the purpose of aiding distressed citizens who were striving to salvage a remnant of estate. Formerly the rule with respect to confirmation had been that "mere inadequacy of price will not justify a court in refusing to approve a sale and in

depriving the purchaser of the benefits of his purchase, unless the inadequacy is so great as to shock the conscience of the court or to amount to evidence of fraud." *Doyle* v. *Maxwell,* 155 Ark. 477, 244 S. W. 732. Again, it was said: "Mere inadequacy of consideration, however gross, unaccompanied by fraud, unfairness, or other inequitable conduct in connection with the sale, is, of itself, insufficient to justify the court in setting the sale aside and refusing confirmation." *Federal Land Bank of St. Louis* v. *Ballentine,* 186 Ark. 141, 52 S. W. (2d) 965.

When foreclosures began multiplying in consequence of economic stagnation, the General Assembly promulgated a policy of helpfulness, and in effect directed "a correction of that wherein the law by reason of its universality, is deficient."

Under the mandate of this legislation, restated in act 49 of 1935, it became the duty of the chancery court, before confirming a sale, "to ascertain whether or not, on account of economic conditions or circumstances attending the sale, a fair price, with reference to the intrinsic value of the property, was obtained, and if it is made to appear to the court that a better price could be obtained at a resale, or if any one agrees to bid a substantially higher amount at a resale, the court shall order a resale."

In *Reiman* v. *Rawls,* 188 Ark. 983, 68 S. W. (2d) 470, act 21 was referred to as "an emergency act passed for the relief or benefit of the citizens of Arkansas who are in destitute circumstances because of the public economic condition * * *. This and much similar legislation passed at the same session of the General Assembly manifests a purpose to accord the debtor the greatest indulgence which may be granted." In *Martin* v. *Kelley,* 190 Ark. 863, 81 S. W. (2d) 933, this court held that "the obvious meaning and effect of § 4 of act 21 of 1933 is that if the property sold does not bring a fair price when its intrinsic value is considered, and it is made to appear that a better price may be obtained at a resale, or if anyone agrees to bid a substantially higher amount for the

property at resale, then it should be directed to be offered at resale; otherwise not."

In the action now under consideration, the chancellor was no doubt moved by a desire to conclude a transaction previously adjudicated, and by the belief that the disparity between bid and value was not such as to justify an order of resale. We believe, however, that a liberal construction of act 21, in connection with the willingness of appellee to pay $25,000 for the property at a time when competitive bids were being received by the commissioner, and the subsequent reduction by appellee of its offer to $20,200 when appellants were unable to give security satisfactory to the commissioner, requires that the cause be reversed. There is the further fact of substantial undisputed equities in other property offered as security on the bond. Although the debt is long past due, and appellee is entitled to payment and has a right to invoke every rule of equity to effectuate this end, yet appellee's own evaluation of the property was $4,800 higher on the morning of the sale than it was a short time later when appellants had been eliminated as contending factors. In the matter of values, appellants' witnesses, Skinner, Brown, James and Abernathy, made estimates on an acreage basis which show an average of $117,438 for the tract, while Rhodes, testifying for appellee, thought it worth $22.50 per acre, or $28,957.50, and the witness Collins' opinion was that $20 per acre, or $25,740, would be about right. R. V. Wheeler placed the value as low as $20,000. Ordinarily, in such matters, estimates by witnesses are not unfavorable to those by whom they are called; likewise, the converse of this rule applies. Allowing liberally for these differences of opinion, the preponderance of testimony establishes a value considerably in excess of the sale price.

The decree of confirmation is reversed, and the cause remanded with directions to set the sale aside, and for such further proceedings as the law directs and the principles of equity require.

BAKER, J., disqualified and not participating.