BURDELL *v.* GENERAL AMERICAN LIFE INSURANCE COMPANY.

4-4919

Opinion delivered January 31, 1938.

*Robert D. Lee,* for appellant.

*McCulloch & Mixon* and *E. W. Brockman,* for appellees.

GRIFFIN SMITH, C. J. This appeal by J. A. Burdell is from the action of the chancery court in refusing to vacate a decree confirming the commissioner's report of the sale of certain real property.

The only question involved is whether there was an abuse of judicial discretion.

The original mortgage and notes which gave rise to the litigation date back to July 15, 1919, when W. D. and Carrie May Graham, husband and wife, borrowed $2,000 from the International Life Insurance Company. Property mortgaged to secure the loan consisted of 160 acres of land lying near the town of Redfield, just off the Little Rock-Pine Bluff highway. It is traversed by the Missouri-Pacific Railway Company's line.

On October 11, 1929, $1,875 of the indebtedness remained unpaid. Appellant Burdell, having purchased 90 acres of the land, entered into a written agreement with the Grahams and with the Missouri State Life In-

surance Company, then owner of the notes and mortgage, that maturity of this balance of $1,875 should be deferred until July 15, 1934, and in consideration of such extension Burdell assumed payment. There was no release of the original obligors. By regular assignment the General American Life Insurance Company acquired the mortgage, notes, and extension agreements.

Suit to foreclose was filed January 26, 1934. It was alleged that conditions had been broken through failure of the mortgagors and Burdell to pay interest, insurance premiums, and taxes. These various items, dating from 1929 to November, 1933, aggregated $223.32, inclusive of interest computed to July 15, 1933, the entire obligation to date of complaint being $2,253.65—$253.65 more than the principal loan of 1919.

No defense was interposed by the Grahams, nor was any answer filed by appellant.

On November 19, 1934, there was a decree of foreclosure and judgment against Carrie May Graham, W. D. Graham, and J. A. Burdell, for $2,253.65.

About two months later—January 26, 1935—the land was sold. Appellee bid in the property for $1,000, the deficiency being $1,253.65. Thereafter the matter remained quiescent until November 2, 1936, when the commissioner's deed and report of sale were approved, no exceptions having been filed. Four months later—March 11, 1937—appellant filed his motion to vacate the order of confirmation, and from an adverse decision as to this motion Burdell has appealed.

Subsequent to the chancellor's act in confirming the sale, and prior to the time appellant filed his motion to vacate, appellee sold 90 acres of the land for a cash consideration of $500. The purchaser, Mrs. Annie O'Brien, took possession before March 11, 1937.

In support of his motion, appellant testified that he was lulled into a sense of security through a letter written by one of appellee's attorneys. In explanation of a notice of sale sent the commissioner, the attorney wrote the following:

"It is my intention to be present when this property is sold under the notice; but if, for any reason, the plaintiff is not represented when you are ready to sell the property, you are instructed to call my office by telephone at my expense and I will arrange immediately to have the plaintiff represented. Also, if the plaintiff is not represented at the sale, I hereby extend a bid in the amount of the debt, interest and cost for this property."

Appellant contends that in January, 1935, prior to the sale on the 26th, he and his attorney called at the commissioner's office, examined the court files, and found this letter; and, believing that the plaintiff intended to bid the property in for debt, interest, and cost, and feeling thus assured that there would be no deficiency judgment, he gave to the transaction no further attention. In fact, he contends that he did not know that a deficiency judgment had been taken until notified that an execution had issued.

"Q. What understanding did you have with your attorney regarding the sale of this property? A. He said there wouldn't be anything to it. The recommendations were that he [appellee] was to bid it in for debt, interest and cost. Q. Who represented you, Mr. Burdell, in this foreclosure suit? A. Well, Mr. Longstreth looked after that."

O. D. Longstreth testified: "When service of summons was had, Mr. Burdell brought me the papers. At that time there was considerable negotiation going on back and forth with the Grahams. Attorney Craig, here, was representing the Grahams at that particular time. Mr. Burdell and I came down to confer with Mr. Craig. It developed that the interest of the Grahams and Burdell were mutual. Mr. Burdell arranged with Mr. Craig to look after the record here, corresponding with me in Little Rock. Through the type of correspondence that goes on where wrecked conditions are involved, with the Grahams trying to raise the money to pay, and Mr. Burdell doing all he could through Mr. Craig, and the continuing status of things, no answer was filed."

There is other testimony showing that after suit was filed, representatives of appellee who were not authorized to make settlement without referring their proposals or suggestions to appellee for approval, conferred at various times with adverse parties, endeavoring to arrive at some satisfactory basis of settlement. However, none was reached, nor is there any showing that in those discussions anyone was overreached, or that any of the acts of appellee's agents were of a nature to justify appellant in believing that any part of his indebtedness in excess of the value of the land would be waived.

Appellant relies upon § 8289 of Pope's Digest, which provides: "Before confirming a sale the court shall ascertain whether or not, on account of economic conditions, or the circumstances attending the sale, a fair price, with reference to the intrinsic value of the property, was obtained. If it is made to appear to the court that a better price could be obtained at a resale, or if anyone agrees to bid a substantially higher amount at a resale, the court shall order a resale on such terms as the court may require."

It will be observed that the duty thus enjoined upon the court is one attaching "before confirming the sale" —that is, if while confirmation is pending it is made to appear that on resale a substantially better price would be offered, it becomes the chancellor's duty to refuse such confirmation.

*Miller* v. *Miller*, 193 Ark. 362; *McBride* v. *Shannon Bros., Inc.*, 193 Ark. 730; *Pope* v. *Shannon Bros., Inc.*, 190 Ark. 441; *Martin* v. *Kelley et al.*, 190 Ark. 863, and *Houston et al.* v. *Lohman*, 191 Ark. 262, are cited as authority for reversal.

In the Miller case it is shown that prior to the sale appellee was active in her own behalf, petitioning the court from time to time for postponements. In the McBride case appellant tendered a bid at the sale. It was declined on account of the character of the security. In the Pope case the sale was had on May 1, 1933, and on June 28, 1933, appellant filed her petition to set the sale

aside. The report was made on June 29. On October 16, 1933, exceptions to the confirmation were filed.

In the Houston case the chancellor issued an order restraining the sheriff from executing a writ of assistance in aid of a confirmation formerly decreed by the court. On appeal the chancellor's action was upheld on the theory that the court was in possession of facts sufficient to justify the course pursued, as shown by the evidence.

In the Martin case, following a reference to the sale, the opinion says: ''Subsequently the commissioner presented his report of sale to the chancery court for approval, and appellees filed exceptions thereto.'' It appears, therefore, that the exceptions were filed before confirmation.

In all of the cases cited by appellant as authority for reversal, diligence was shown by the party opposing confirmation.

In this case appellant, while relying upon averments made in the letter, was negligent in not observing that the attorney's directions were conditional; the bid was to be made in the event, and only in the event, that plaintiff should fail to have a representative present. This statement was coupled with a declaration that it was the intention of the attorney to personally attend the sale. Effect of the attorney's letter was to say that if circumstances were such that plaintiff could not be represented, nevertheless plaintiff did not intend that the land should be sold to another for less than the mortgage debt, and as a precaution against this eventuality, the commissioner was authorized to bid.

No representation was made to appellant, nor was the direction intended for his attention. However sincere appellant may be in urging that he was misled, yet by no construction can it be said that appellee's attorney violated any confidence or took advantage of appellant's situation. Indeed, there is no evidence that appellee knew appellant had seen the letter.

The decree is affirmed.