POPE *v.* SHANNON BROTHERS.

4-5812 · 138 S. W. 2d 382

Opinion delivered March 4, 1940.

*Kenneth Rayner,* for appellant.

*A. B. Shafer* and *Canada & Russell,* for appellee.

GRIFFIN SMITH, C. J. The appeal is from a decree of June 30, 1939, dismissing appellant's complaint for want of equity.

The complaint alleges a "purported" sale of 1,280 acres of land June 9, 1937, with confirmation June 27, 1938; that Shannon Brothers agreed with Mrs. Pope, the mortgagor, that the property might be redeemed on or before October 10, 1938, by payment of $27,800 and taxes; that appellant understood the agreement to be an ex-

tension of time for payment of the indebtedness, and but for such understanding she would have opposed confirmation of the sale.

Three acres not included in the mortgage are involved in this litigation.

This is the fourth appeal from decrees affecting the 1,280-acre tract. *Pope* v. *Shannon Brothers, Inc.,* 190 Ark. 441, 79 S. W. 2d 278; *McBride* · v. *Shannon Brothers, Inc.,* 193 Ark. 730, 102 S. W. 2d 535; *Pope* v. *Shannon Brothers, Inc.,* 195 Ark. 770, 114 S. W. 2d 1.

April 17, 1930, Mrs. Pope borrowed $8,000 of Shannon Brothers. The loan was secured by mortgage on 1,280 acres of land near West Memphis, Ark. In May, 1933, the property was sold for $11,790.44, representing principal, interest, taxes, costs, etc. The decree of foreclosure was set aside by this court because there was no affirmative showing that act 21 of 1933 had been complied with, the sale having been confirmed at an adjourned day of court.

December 2, 1935, the property was again sold for debt, interest, and cost, amounting to $20,200. On appeal the decree of confirmation was set aside for failure to comply with the spirit of act 21 of 1933 and act 49 of 1935.

March 7, 1938, the controversy was again before this court on allegations of irregularities of the chancery court. The decree was affirmed.

The decree of June 27, 1938, recites that appellant and her attorney were in court. Appellant informed the chancellor she had acquired the interest of former co-defendants. She consented that the sale be confirmed. The confirmation decree was approved by her attorney.

At the sale June 9, 1937, appellee bid the property in for a sum approximately $2,000 less than the indebtedness, in consequence of which there was a deficiency judgment. Before the decree of June 27 was agreed to appellant deeded appellee three acres touching Highway No. 70. Payment was $10 ". . . and the further consideration of the satisfaction and cancellation [of the deficiency judgment]."

In consideration of this deed appellee consented to the option of repurchase. Contract is printed in the footnote.[1]

Appellant says that immediately after June 27 she began negotiations with lending agencies with a view to procuring sufficient money to pay the debt during the option period. She insists that she did not read the contract prior to its execution; that the attorney representing her at that time handed her a paper to be signed, with the explanation it was the best he could do.[2]

Capt. W. A. Wedemeyer, of Ft. Bragg, North Carolina (appellant's son-in-law) interested himself in loan negotiations. His wife, Synthia Pope Wedemeyer, applied to Jefferson Standard Life Insurance Company for $35,000, appellant's lands to be mortgaged as partial security.

October 8, 1938, Capt. Wedemeyer was informed that his wife's application had been approved by the insurance company for $30,000, ". . . subject to the assignment of $5,000 old life insurance and $15,000 new insurance [on Capt. Wedemeyer's life]." Another condition was that the notes should be indorsed by Capt. Wedemeyer.

Upon receipt of the insurance company's letter Capt. Wedemeyer went to Memphis. The morning of October 10 appellee was told that appellant desired to pay the indebtedness. Appellant, her husband, and Capt. Wedemeyer called on Jim Shannon, president of Shannon Brothers, Inc. The letter from the insurance company was shown Mr. Shannon, who told his callers to consult with his lawyer. When appellant and her associates called upon the attorney Mr. Shannon was present.

[1] "Option contract. This agreement witnesseth: That Shannon Brothers, Inc., a corporation, for and in consideration of the sum of one dollar, cash to it in hand paid, doth hereby grant to Lady P. Pope, or her assigns, an option to purchase [the lands in question] for the sum of $27,900 cash at any time up to and prior to the 10th day of October, 1938. It is understood and agreed that in event of an election to exercise this option, the optionee shall pay in addition to the price above named all taxes and assessments due upon said lands.

"Notice of an intent to exercise this option shall be given in writing and shall be accompanied by a cashier's check drawn by either the cashier of the First National Bank, The National Bank of Commerce & Trust Company, or the Union Planters National Bank & Trust Company, all of Memphis, Tennessee, in the sum of $27,900, payable to the order of Shannon Brothers, Inc. It is expressly stipulated and agreed that time is of the essence of this contract. . . ."

[2] The attorney representing Mrs. Pope at the time the consent decree was entered is highly ethical. The testimony does not in any sense reflect upon his conduct. On the contrary it shows that he exerted every possible effort for his client.

The record discloses testimony by appellant's husband that Mr. Shannon, through his attorney, refused to accept any payment. On cross-examination the witness admitted they did not have the money, ". . . but thought they had the equivalent to it." Later in the day appellant sent Shannon Brothers the following telegram: "Re your agreement to convey land to me. Accept your terms and will pay money according thereto upon abstract of title furnished by you."

The agreement under which the right to repurchase was given is denominated "option contract." It recites that "time is of the essence of the contract"; that the right granted may be exercised ". . . at any time up to and prior to the tenth day of October, 1938." Notice of an intent to exercise the option ". . . shall be given in writing and shall be accompanied by a cashier's check." The bank (either of three) upon which the check must be drawn was designated.

The option was not availed of in the manner and within the time requisite. No offer of money or its equivalent was made. The telegram was conditional in that it imposed upon appellee the burden of providing an abstract. The option did not provide for an abstract.

Under appellant's own conditions there was no way by which the transaction could have been consummated October 10. If it be conceded that the insurance company had approved the loan, still, the approval was conditional. There was the requirement that Capt. Wedemeyer procure $15,000 of new life insurance and assign it to the company. There is no evidence the subject was insurable other than the fact that he had a $5,000 policy. It is conceivable that rejection would have followed a medical examination.

We are not insensible of the earnest efforts appellant has exerted to save her lands. On two occasions this court invoked the full effect of statutory provisions in her behalf. On the other side of the picture is the lender who since 1933 has insisted upon collecting that to which it was entitled. Finally, after a long period of legal travail, appellant and appellee, by unambiguous con-

tract, agreed that appellant's remaining rights were those encompassed within the option. There was a forfeiture of these rights. Courts cannot change private contracts which competent people are permitted to make.

The decree is affirmed.

Mr. Justice BAKER did not participate in the consideration of this case.