Charlotte Von Hasslocher et al. *v.* Executors of J. Robinson, deceased.

## SUPREME COURT—IN EQUITY.

### APRIL TERM—1877.

*Harris, Ch. J., Judd and McCully, J. J.*

CHARLOTTE VON HASSLOCHER AND EUGENE VON HASSLOCHER HER HUSBAND *vs.* CURTIS P. WARD, S. C. ALLEN AND MARK P. ROBINSON, EXECUTORS OF THE WILL OF JAMES ROBINSON, DECEASED.

BEQUEST to executors in trust for the use and benefit of a daughter, interest to be paid quarterly, with remainder to her children ; HELD that the executors could not retain the said interest for payment of a note to the deceased made in the State of California by the said legatee and her husband.

Likewise, that a direct bequest to said daughter could not be retained, the note not having been mentioned in the will, and she not being a debtor to the deceased under the laws of California.

OPINION BY JUDD, J.

This case comes up on appeal from the Chancellor.

It appears that the late James Robinson, by his will, made the following devise in favor of his daughter Charlotte, the wife of Eugene Von Hasslocher:

"I give, devise and bequeath to my executors hereinafter named in trust for the use and benefit of my daughter Charlotte Hasslocher twelve thousand dollars, the interest from the same to be paid to her for the term of her natural life in quarterly payments, and after her death, I give devise and bequeath the said sum of twelve thousand dollars to the children of my daughter Charlotte Hasslocher, who may survive her and to their heirs. I also give, devise and bequeath to my daughter Charlotte Hasslocher one thousand dollars."

Charlotte Von Hasslocher et al. v. Executors of J. Robinson, deceased.

The will is dated the 25th of July, 1872, and the testator died August 8th, 1876.

The defendants were named in the will as executors, and procured its admission to Probate on the 7th of September, 1876.

The estate of the testator is large, and more than sufficient to satisfy all the just debts, funeral and testamentary expenses and the legacies given by the will.

The defendants claim that they are entitled to retain the income of the twelve thousand dollars above mentioned as it may accrue, as well as the legacy of one thousand dollars, as an offset for and in payment of a promissory note made by Charlotte Von Hasslocher and her husband Eugene Von Hasslocher for five thousand and seventy-five dollars in favor of the testator, dated May 24th, 1872, at San Francisco, California, U. S. A.

The bill is brought to determine the question whether the executors are entitled thus to retain the bequests to Mrs. Charlotte Von Hasslocher in payment and satisfaction of this note.

**BY THE COURT.**

In this case the first question arises,—Did the testator release the note by his legacy ?

In 2 Redfield on Wills, p. 521, the author says, "It seems to be well settled that a legacy by the *creditor* to his *debtor* shall not be treated as a presumptive release of the debt, unless there is some special ground for presuming such must have been the intention of the testator."

In 2 Roper on Legacies, p. 1026, we find,—"Where a *creditor* bequeaths a legacy to his *debtor*, and either does not notice the debt, or mentions it in such a manner as to leave his intention doubtful, and after his death the securities are found uncancelled among the testator's effects, the Court of Equity do not consider such legacy as necessarily or even *prima facie*, a release or or extinguishment of the debt; but

requires evidence clearly expressive of the intention to release the debt."

Id, 1064—"If such intention does not appear clearly expressed or implied on the face of the will, evidence from other sources will be admitted."

Id, 1066—"But when the evidence to release the debt is not clear, either by reason of the ambiguity of the expressions in the will, or of the insufficiency of the evidence itself, the gift of the legacy will not of itself amount to a release of the debt."

In the will under consideration the testator does not mention the note, and we can gather nothing from its contents clearly expressive of his intention to release it. No testimony from other sources was offered from which any such intention could be gathered. Adopting then the rule of law above quoted, we hold that the gift of the legacy to Mrs. Hasslocher did not extinguish the note, and the will itself is silent as to the testator's intention.

"Mere absence of intention can never be construed into a release." See Whitten *vs.* Woodhouse, 4 Bro. C. C.

We are aware that where the testator being *indebted* bequeaths to his *creditor* a legacy equal to or exceeding the amount of the debt, which is not mentioned in the will, in the absence of any contrary intention, it is said that the rule is that the testator shall be presumed to have meant the legacy as a satisfaction of the debt. See 2 Roper on Legacies, p. 1026. But this rule has frequently been disapproved of, and many exceptions are made to it.

The next question involved is, whether Mrs. Charlotte Von Hasslocher can be considered as the debtor of the testator. She, with her husband, signed the note. In California, where the note was made, she would not be liable.

Civil Code of California, § 167 (1872)—"A wife can make no contract for the payment of money."

Brown *vs.* Orr, 29 Cal., 120—"A married woman is not

Charlotte Von Hasslocher et al. *v.* Executors of J. Robinson, deceased.

bound by a promissory note executed by her jointly with her husband. It is the note of the husband alone."

Shartzer *vs.* Love, 40 Cal., 93—"A woman is not personally liable on a contract signed by her husband and herself. It is the contract of the husband alone."

Nor would she seem liable on such a note in this kingdom. See Civil Code, Section 1287.

The note, therefore, cannot be set off against a legacy to the married woman, for it is not *her debt.*

The case of Rogers *vs.* Daniels et al., 8 Allen, 343, bears a close similarity to the one we are considering.

Here a married woman had, in Baltimore, made a promissory note jointly with her husband to her father for moneys advanced to her husband, living in Boston, who left her (as well as his other children) a legacy in his will on the following terms, viz.: "Provided, however, that any *legal debt* due from either of said children to my estate at the time of my decease, shall first be deducted by my said trustees, and the balance only to be invested for the benefit of, or paid over to, such children as aforesaid." The Supreme Court of Massachusetts held that this note, because by the laws of Maryland, the notes of a married woman create no legal obligation on her part, could not be considered as a "legal debt" due the testator by his legatee, and that its amount could not be deducted from the legacy.

But it is said that this note is still the obligation to pay of Mrs. Hasslocher's husband, and that as her personal estate is, by our statutes, the property of the husband, it is liable for his debts, and is subject to the rights of his creditors.

See Civil Code, Section 1286.

"The husband shall, in virtue of his marriage, and in consideration of the responsibilities imposed on him by law, be the virtual owner, except otherwise stipulated by express marriage contract, of all movable property belonging to his wife anterior to marriage, and of all movable property

accruing to her after marriage; over all of which movable property he shall, unless otherwise stipulated by contract, have absolute control for the purposes of sale or otherwise, and the same shall be equally liable with his own for his own private debts." This enactment is the common law on this subject.

By the will of James Robinson, the sum of twelve thousand dollars is devised to the executors in trust for the use and benefit of Mrs. Hasslocher, the income to be paid by the executors to Mrs. Hasslocher for the term of her natural life in quarterly payments, and after her death the principal is bequeathed to her children.

Is this a settlement for the separate use of Mrs. Hasslocher —free from the control of her husband ?

"In order to sustain a trust to the separate use of a married woman, the intention to exclude the husband must be clear and certain, and not a matter of reference, upon this principle that the husband is bound to maintain the wife, and bear the burdens incident to marriage, and he has *prima facie* a right to her property to enable him to discharge these obligations." '2 Perry on Trusts, Section 647 and cases cited. We find that the authorities are conflicting as to what words are sufficient to create a separate use in a married woman. The words which are often used and which are held to create a separate estate in a married woman are when the legacy is given to the wife "for her sole and separate use."

In Shewill *vs.* Dwarris, 1 John, (Eng.) 172, where the gift was to the wife "to be for her own and family's use during her natural life "—the Court held that the husband's right did not attach.

In Jamison *vs.* Brady, 6 S & R., 465, a bequest to a married woman "for her own use " is equivalent to a bequest to her for her separate use, and in an action by the husband and wife for the legacy, a debt due by the husband to the testator cannot be set off, against it."

So also in Hech *vs.* Clippenger, 5 Barr, 385, the words "to be paid to her semi-annually during her life and afterwards to her children."

The words of the will under consideration are : "to be paid to her for the term of her natural life in quarterly payments, and after death * * * to her children."

We are of the opinion that these words are sufficient to establish a trust in the executors for the separate use of Mrs. Hasslocher free of the control of her husband; and that this was the testator's intention.

But the legacy of one thousand dollars is not in trust; it is a direct gift to Mrs. Hasslocher—viz: "I give, devise and bequeath to my daughter Charlotte Hasslocher, one thousand dollars."

Chancellor Kent says (2 Kent. Com. Section 138) as to the "wife's choses in action, they are not vested absolutely in the husband, but the husband has power to sue for and recover, or release or assign the same; and when recovered, and reduced to possession, and not otherwise, it is evidence of a conversion of the same to his own use, and the money becomes, in most cases, absolutely his own. The rule is the same if a legacy or distributive share accrues to the wife during coverture."

In Hayward *vs.* Hayward, 20 Pick. 517, the Court held, if a distributive share of intestate personal estate accrue to a married woman during coverture, and the husband die before the decree of distribution, and without any act on his part reducing it to possession, it survives to the wife.

But in the same volume, Wheeler *vs.* Bowen, 20 Pick. 563, the Court held that a distributive share of an intestate's estate in the hands of an administrator can be held under the trustee process for the debts of the husband.

If the husband die pending the suit, the trustee will be discharged, as the wife's right of survivorship is not divested until judgment. Strong *vs.* Smith, 1 Metcalf, 476. In this

case Shaw, C. J., says "nothing short of a judgment will amount to such reduction to possession as to the bar the wife's right of survivorship. We think also that the creditor of the husband has no higher or better right than he himself had."

In Parsons *vs.* Parsons, (1838) 9 N. H. 321, all of the authorities are ably reviewed by Parker, C. J. The Court, in this case held that "neither a legacy to a wife, nor a distributive share in an estate, in which she is interested, vests in the husband absolutely. They are not like her personal property in possession, which becomes absolutely his."

In Marston *vs.* Carter, 12 N. H. 159, the same judge says "the decisions here have not gone so far as to authorize the creditor, by any process, to appropriate a legacy or distributive share of the wife to the payment of the husband's debts, without his assent, and before he has asserted a title to it.

In Wheeler *vs.* Moore, 13 N. H. (1843) 478, the Court held that the distributive share of the wife in an intestate estate can not be attached, by the trustee process, for a debt of the husband, until he has done some act to reduce it to possession, or in some way asserted a right to it.

Judge Parker says, (*Ib.* 482) "the principle which will authorize the creditor to interfere, and appropriate the property of the wife to the payment of the husband's debts, is not apparent to us. The right of the husband to take the distributive share of the wife to his own use, is a marital right. A creditor cannot exercise rights of that character against the will of the husband."

See also opinion of Chief Justice Marshall in Gallego *vs.* Gallego's Exors, 21 Brock., 287, "since the claim of the creditor extends only to the property of the debtor, it cannot reach a legacy until it becomes his property. A relinquishment by the husband of his marital right to a legacy bequeathed to his wife, is valid as to the creditors of the husband, and a Court of Equity will not interpose its authority

to compel the husband to reduce the legacy into his posses-
sion, for the purpose of subjecting it to their claims."

This principle is reaffirmed in Peirce *vs.* Dustin, 4 Foster,
(N. H.) 417, and in this case the Court refused to allow as a
set-off against a wife's legacy, the demands against the
husband."

In the case before us we adopt the rule of the New Hamp-
shire Courts, and, as Eugene von Hasslocher has not reduced
his wife's bequests to possession nor exercised his marital
right to them, we cannot compel him to do this for the pur-
pose of subjecting them to the claims of the creditors.

In the bill both husband and wife join in asking the inter-
vention of the Court in order that the wife, Charlotte Hass-
locher, may receive to her use and benefit the legacy of one
thousand dollars and the full income of the twelve thousand
dollars without off-set for or by reason of said promissory
note.

The reasoning above adopted as regards the legacy of one
thousand dollars will also apply to the income of the twelve
thousand dollars. To allow these funds to be the subject of
a set-off of demands against the husband without his or his
wife's consent would be to defeat the object of the will.

No reference was made in argument to the case of " In the
matter of the estate of Napua Zupplein Kaluahine," 3rd
Haw. Rep., p. 323, October, 1871, which apparently involves
the question here at issue, where this Court held that the
husband was entitled as against the heirs at law of his wife
to receive her personal property which had been vested in a
trustee, although he had not reduced the same to his posses-
sion during her lifetime. But in that case the husband made
the claim for himself. He asserted a marital right which it
belonged to him to exercise if he so pleased. The principle
of the rule, namely, that the husband having assumed the
obligation of his wife's debts and of her support, is entitled
to the aid of her property, goes no further. It will not avail

his creditors. Again citing from Chief Justice Parker in Marton *vs.* Carter "a creditor without the assent of the husband cannot reach the property unless the case is an exception to the general rule. We are not aware of any other marital right which the law permits him to exercise in his character of a creditor." In the case at bar the husband expressly declines to assert his right.

For the reasons above given we are of opinion that the judgment of the Chancellor should be affirmed.

A. S. Hartwell, for plaintiffs.

E. Preston and J. M. Davidson, for defendants.

Honolulu, April 24th, 1877.