POPE v. McBRIDE.

4-7443                                184 S. W. 2d 259

Opinion delivered November 20, 1944.

*Wils Davis* and *R. C. Brown,* for appellant.

*Edward P. Russell* and *A. B. Shafer,* for appellee.

GRIFFIN SMITH, Chief Justice. The question is, Did J. H. Pope lose his interest when Union & Planters Bank as owner in succession foreclosed the trust deed[1] he executed on 240 acres owned by the entirety?—the wife not being a party to the conveyance.

When Mrs. L. P. McBride married Pope she had five children. Katherine, twelve years of age when the wedding occurred in 1899, is one of the appellees here.

---

[1] The trust deed was subject to a reservation not related to the right of survivorship.

The land vested in husband and wife through deed of Mary J. Phillips (Mrs. Pope's mother), made in 1901.

Pope alleged his ownership of the lands described in his complaint filed in February 1944. Defendants other than the McBride children settled *pendente lite.*

Various transactions as abstracted by appellees are set out in the footnote.[2]

Mrs. Pope died in October, 1940.

[2] (1)  January 9, 1901, deed from Mrs. Phillips, mother of Mrs. Pope, to J. H. and Lady P. Pope.   (2)   March 30, 1901, deed from J. H. Pope and Lady P. Pope to T. A. Pope, conveying a "one-half undivided interest of the one-half interest of James H. Pope."   (3) March 16, 1921, trust deed from J. H. Pope securing payment to North Memphis Savings Bank of $30,000.00 and mortgaging J. H. Pope's interest in the lands.   [This is the deed acquired by Union & Planters Bank].   (4)   March 30, 1921, T. A. Pope Trust Deed to North Memphis Savings Bank securing the payment of approximately $37,000.00 and reserving to T. A. Pope the first $4,000.00 of the foreclosure proceeds in the event of foreclosure.   (5)   June 2, 1924, decree of the Chancery Court of Crittenden County, foreclosing the above mentioned mortgages.   (6)   March 18, 1925, deed from Commissioner in Chancery to Union Planters Bank and Trust Company, purchaser of the interest of J. H. Pope and T. A. Pope in the lands.   (7)   September 18, 1928, deed from Union Planters Bank and Trust Company to Katherine McBride selling to her the interests in the lands previously owned by J. H. Pope and T. A. Pope, for a consideration of $5,000.00.   (8)   September 18, 1928, trust deed from Katherine McBride and Lady P. Pope to R. C. Brown, trustee for Abe Goodman securing $4,000.00.   [It will be observed that Katherine McBride borrowed $4,000.00 but paid $5,000.00 for the interest purchased.   This difference of $1,000.00 was a part of her savings].   (9)   March 26, 1929, T. A. Pope executed special warranty deed to Katherine McBride conveying the interest previously held by him.   (10)   April 17, 1930, Katherine McBride and Lady P. Pope borrowed from Shannon Brothers $25,000.00 and executed trust deed on the lands north of Highway 70 which ultimately resulted in foreclosure of said lands and acquisition of same by Shannon Brothers.   (11)   November 4, 1937, deed from Katherine McBride to Lady P. Pope.   (12)   June 27, 1938, deed from Lady P. Pope to Shannon Brothers, Inc., conveying all the land north of Highway 70 in satisfaction of the debt owed Shannon Brothers, Inc.

.   .   .   .   .

The first sale is evidenced by the deed of husband and wife, who conveyed to T. A. Pope[3] ". . . a one-- H. Pope." March 16, 1921, J. H. Pope's indebtedness of $30,000 to North Memphis Savings Bank was secured by half undivided interest of the one-half interest of James

[3] T. A. Pope, a dentist residing at Franklin, Tenn., was appellant's brother.

trust deed.[4] Two weeks later T. A. Pope also conveyed to a trustee for the Bank. In June 1924, Union & Planters Bank foreclosed.[5]

For a consideration of $5,000, Katherine McBride (September 18, 1928) purchased from the Bank the interest it acquired under the commissioner's deed. By reference to the sequence of transactions, as shown by the second marginal note, it will be observed that the day the Bank's sale was made, Katherine and Mrs. Pope borrowed $4,000 by conveying to a trustee for Abe Goodman the land Katherine had purchased from the Bank. November 4, 1937, Katherine, by quitclaim deed, conveyed her interest to Mrs. Pope for "$1 and other good and valuable considerations received."[6] Hence, when Mrs. Pope died, record title was in her.

Two children were born to J. H. Pope and his wife, both of whom are living.

Four of Mrs. Pope's children by her marriage to McBride were living in 1911, and to these, during that year, she devised her real property. There was this explanation in the will: "I make no provision for my two younger children, Cynthia Pearl Pope and James Hannah Pope, because they will be sufficiently provided for out of that part of my property which will pass to their father upon my death."

---

[4] Abstract pages appearing in the transcript show that the trust deed was executed by Memphis Ginning Company and J. H. Pope. A notation is: "Lady P. Pope, wife of J. H. Pope, appears in the face of this instrument, but does not sign or acknowledge same." [A covenant was to forever warrant and defend the title].

[5] In appellant's brief it is stated that the decree foreclosing Dr. T. A. Pope's trust deed was set aside June 25, 1927. There is the notation, "See order." But the record contains 385 pages, and the order is not otherwise identified. This becomes unimportant, however, (except in support of the contention that Katherine held as trustee) because in April, 1929, Dr. Pope executed his quitclaim deed to her.

[6] Although Katherine conveyed to her mother, she joined her fifteen months later in a deed to Shannon Brothers, conveying the merchantable timber on what was known as the Stovall Place, embracing 1,287 acres. [See *Pope* v. *Shannon Brothers*, 190 Ark. 441, 79 S. W. 2d 278; *McBride* v. *Shannon Brothers, Inc.*, 193 Ark. 730, 102 S. W. 2d 535; *Pope* v. *Shannon Brothers, Inc.*, 195 Ark. 770, 114 S. W. 2d 1].

The Court did not err in dismissing J. H. Pope's suit for want of equity.

The primary issue, as stated in the first paragraph of this opinion, has been subdivided by appellant, who seeks answers to the following questions:

(a) Did the transfers from Union & Planters Bank to Katherine McBride, and from Katherine McBride to Mrs. Pope, amount to a redemption, having the effect of ''recreating an estate by the entirety in a three-fourths interest in the land sued for''? (b) Was a trust created in favor of appellant in consequence of ''negotiations and transfers'' as to three-fourths of the land, and (c) was there a trust in appellant's favor by reason of transfers from Dr. T. A. Pope to Katherine McBride, and from Katherine McBride to Mrs. Pope, as to the so-called fourth interest sold Dr. Pope by J. H. Pope and his wife?

Appellant says the record conclusively shows that when the property was originally acquired, his money supplied the cash payment, and that he personally discharged a mortgage the grantee assumed. This, however, is denied.

Soon after their marriage the Popes moved to a home owned by Mrs. Pope on McLemore Avenue, in Memphis. Being in need of personal funds, Mrs. Pope mortgaged her home to her husband, and from time to time during succeeding years the two engaged in business enterprises on their separate accounts. There is testimony that domestic relations were far short of that degree of tranquillity found in a well-ordered home. Appellant admits there were occasional discordant notes, but minimizes these with the observation that they were no more frequent nor of greater violence than may be expected in average family life. Katherine McBride and other witnesses say that for years there was an entire absence of congeniality; that in fact, Pope and his wife dealt at ''arm's length.''

Although the decree does not contain express findings, the Chancellor would have been justified in holding

that Katherine McBride's participation was prompted through a desire to assist her mother during extremely difficult times. While appellant argues that the money used in paying the Bank was borrowed from Goodman with the land as security, it appears that the amount paid was $5,000 and the loan was for $4,000. Personal checks were exhibited which, it was contended, were used in the transaction. Nor does the record sufficiently support appellant's insistence that his wife, in acquiring the property, was acting for him, or that their interests were such as to justify the belief there was a unity of purpose. It follows that the trust theory must fail.

Estates by the entirety were discussed by Mr. Justice RIDDICK in *Branch* v. *Polk,* 61 Ark. 388, 33 S. W. 424, 30 L. R. A. 324, 54 Am. St. Rep. 266. A married woman, it was said, may convey an undivided half interest in such an estate, subject to the husband's right of survivorship. Commenting upon the effect of legislation enlarging the rights of married women, Judge RIDDICK said: "The right of the wife to control and convey her interest [in an estate by the entirety] . . . is now equal to the right of the husband over his interest. They each are entitled to one-half of the rents and profits during coverture, with power to each to dispose of or to charge his or her interest, subject to the right of survivorship existing in the other."

In *Roulston* v. *Hall,* 66 Ark. 305, 50 S. W. 690, 74 Am. St. Rep. 97, a wife who divorced her husband was held to be entitled to rents from half of the whole estate while they both lived, the entire property going to the survivor. But the right of disposal was recognized, the holding being that "[such alienation by the husband] will not defeat the wife's title to that moiety if she survive him; but, if he survive, the conveyance becomes as effective to pass the whole estate as it would had he been sole seized at the time of the conveyance."

Chief Justice McCULLOCH, in *Davies* v. *Johnson,* 124 Ark. 390, 187 S. W. 323, in holding that the character of an estate held by the entirety was not destroyed by di-

vorce, said: "Suppose one of the parties executed a deed to a third party during the coverture, purporting to convey the whole estate, the deed would convey all of the vested interest of the grantor, including the rights resulting from survivorship, and it would be an anomalous situation to hold that such a vested interest could be divested by divorce of the parties."

*Moore* v. *Denson,* 167 Ark. 134, 268 S. W. 609, is authority for the proposition that real property held as an estate by the entirety may be sold under execution to satisfy a judgment against the designated spouse. Cases holding that character of the estate has not been changed by statute are cited in *Ward* v. *Ward,* 186 Ark. 196, 53 S. W. 2d 8.

The essential feature of entire estates is that each owner, whether husband or wife, "is secure against an impairment of rights through the sole act of the other." *Donahue et ux.* v. *Hubbard,* 154 Mass. 537, 28 N. E. 909, 14 L. R. A. 123, 26 Am. St. Rep. 271.

Appellant, in the case at bar, did not impair his wife's rights by his mortgage, nor in any manner charge the estate as to her. Had he predeceased Mrs. Pope, title to all the land not otherwise disposed of would have vested in her. But, as was said in the Davies-Johnson case, his trust deed, when foreclosed, conveyed all of the grantor's vested interest, [and] "the rights resulting from survivorship."

Result is that appellant parted with his interest in the property when he permitted foreclosure. The acts of Katherine McBride in purchasing and in conveying to her mother could not have the effect of revitalizing Pope's former estate. He sold the rights resulting from survivorship—a fact he no doubt considered.

Affirmed.