MASAKO SAWADA and HELEN SAWADA, Plaintiffs-Appellants, *v.* KOKICHI ENDO, SAMUEL H. ENDO, and TORU ENDO, Defendants-Appellees

NO. 5547

MARCH 29, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR and KIDWELL, JJ.

OPINION OF THE COURT BY MENOR, J.

This is a civil action brought by the plaintiffs-appellants, Masako Sawada and Helen Sawada, in aid of execution of money judgments in their favor, seeking to set aside a conveyance of real property from judgment debtor Kokichi Endo to Samuel H. Endo and Toru Endo, defendants-appellees herein, on the ground that the conveyance as to the Sawadas was fraudulent.

On November 30, 1968, the Sawadas were injured when struck by a motor vehicle operated by Kokichi Endo. On June 17, 1969, Helen Sawada filed her complaint for damages against Kokichi Endo. Masako Sawada filed her suit against him on August 13, 1969. The complaint and summons in each case was served on Kokichi Endo on October 29, 1969.

On the date of the accident, Kokichi Endo was the owner, as a tenant by the entirety with his wife, Ume Endo, of a

parcel of real property situate at Wahiawa, Oahu, Hawaii. By deed, dated July 26, 1969, Kokichi Endo and his wife conveyed the property to their sons, Samuel H. Endo and Toru Endo. This document was recorded in the Bureau of Conveyances on December 17, 1969. No consideration was paid by the grantees for the conveyance. Both were aware at the time of the conveyance that their father had been involved in an accident, and that he carried no liability insurance. Kokichi Endo and Ume Endo, while reserving no life interests therein, continued to reside on the premises.

On January 19, 1971, after a consolidated trial on the merits, judgment was entered in favor of Helen Sawada and against Kokichi Endo in the sum of $8,846.46. At the same time, Masako Sawada was awarded judgment on her complaint in the amount of $16,199.28. Ume Endo, wife of Kokichi Endo, died on January 29, 1971. She was survived by her husband, Kokichi. Subsequently, after being frustrated in their attempts to obtain satisfaction of judgment from the personal property of Kokichi Endo, the Sawadas brought suit to set aside the conveyance which is the subject matter of this controversy. The trial court refused to set aside the conveyance, and the Sawadas appeal.

I

The determinative question in this case is, whether the interest of one spouse in real property, held in tenancy by the entireties, is subject to levy and execution by his or her individual creditors. This issue is one of first impression in this jurisdiction.

A brief review of the present state of the tenancy by the entirety might be helpful. Dean Phipps, writing in 1951,[1] pointed out that only nineteen states and the District of Columbia continued to recognize it as a valid and subsisting institution in the field of property law. Phipps divided these jurisdictions into four groups. He made no mention of Alaska

---

[1] Phipps, "Tenancy by Entireties," 25 Temple L. Q. 24 (1951).

and Hawaii, both of which were then territories of the United States.

In the Group I states (Massachusetts, Michigan, and North Carolina) the estate is essentially the common law tenancy by the entireties, unaffected by the Married Women's Property Acts. As at common law, the possession and profits of the estate are subject to the husband's exclusive dominion and control. *Pineo v. White,* 320 Mass. 487, 70 N.E.2d 294 (1946); *Speier v. Opfer,* 73 Mich. 35, 40 N.W. 909 (1888); *Johnson v. Leavitt,* 188 N. C. 682, 125 S.E. 490 (1924). In all three states, as at common law, the *husband* may convey the entire estate subject only to the possibility that the wife may become entitled to the whole estate upon surviving him. *Phelps v. Simons,* 159 Mass. 415, 34 N.E. 657 (1893); *Arrand v. Graham,* 297 Mich. 559, 298 N.W. 281 (1911); *Hood v. Mercer,* 150 N.C. 699, 64 S.E. 897 (1909). As at common law, the obverse as to the wife does not hold true. Only in Massachusetts, however, is the estate in its entirety subject to levy by the husband's creditors. *Splaine v. Morrissey,* 282 Mass. 217, 184 N.E. 670 (1933). In both Michigan and North Carolina, the use and income from the estate is not subject to levy during the marriage for the separate debts of either spouse. *Dickey v. Converse,* 117 Mich. 449, 76 N.W. 80 (1898); *Hood v. Mercer, supra.*

In the Group II states (Alaska, Arkansas, New Jersey, New York, and Oregon) the interest of the debtor spouse in the estate may be sold or levied upon for his or her separate debts, subject to the other spouse's contingent right of survivorship. *Pope v. McBride,* 207 Ark. 940, 184 S.W.2d 259 (1945); *King v. Greene,* 30 N.J. 395, 153 A.2d 49 (1959); *Hiles v. Fisher,* 144 N.Y. 306, 39 N.E. 337 (1895); *Brownley v. Lincoln County,* 218 Ore. 7, 343 P.2d 529 (1959). Alaska, which has been added to this group, has provided by statute that the interest of a debtor spouse in any type of estate, except a homestead as defined and held in tenancy by the entirety, shall be subject to his or her separate debts. *Pilip v. United States,* 186 F. Supp. 397 (D. Alaska, 1960).

In the Group III jurisdictions (Delaware, District of Columbia, Florida, Indiana, Maryland, Missouri, Pennsylvania, Rhode Island, Vermont, Virginia, and Wyoming) an attempted conveyance by either spouse is wholly void, and the estate may not be subjected to the separate debts of one spouse only. *Citizens Savings Bank Inc. v. Astrin*, 44 Del. 451, 61 A.2d 419 (1948); *Golden v. Glens Falls Indemnity Co.*, 102 App. D.C. 106, 250 F.2d 769 (1957); *Hunt v. Covington*, 145 Fla. 706, 200 So. 76 (1941); *Sharp v. Baker*, 51 Ind. App. 547, 96 N.E. 627 (1911); *McCubbin v. Stanford*, 85 Md. 378, 37 A. 214 (1897); *Otto F. Stifel's Union Brewing Co. v. Saxy*, 273 Mo. 159, 201 S.W. 67 (1918); *O'Malley v. O'Malley*, 272 Pa. 528, 116 A. 500 (1922); *Bloomfield v. Brown*, 67 R.I. 452, 25 A.2d 354 (1942); *Citizens' Savings Bank & Trust Co. v. Jenkins*, 91 Vt. 13, 99 A. 250 (1916); *Vasilion v. Vasilion*, 192 Va. 735, 66 S.E.2d 599 (1951); *Ward Terry and Company v. Hensen*, 75 Wyo. 444, 297 P.2d 213 (1956).

In Group IV, the two states of Kentucky and Tennessee hold that the contingent right of survivorship appertaining to either spouse is separately alienable by him and attachable by his creditors during the marriage. *Hoffmann v. Newell*, 249 Ky. 270, 60 S.W.2d 607 (1933); *Covington v. Murray*, 220 Tenn. 265, 416 S.W.2d 761 (1967). The use and profits, however, may neither be alienated nor attached during coverture.

It appears, therefore, that Hawaii is the only jurisdiction still to be heard from on the question. Today we join that group of states and the District of Columbia which hold that under the Married Women's Property Acts the interest of a husband or a wife in an estate by the entireties is not subject to the claims of his or her individual creditors during the joint lives of the spouses. In so doing, we are placing our stamp of approval upon what is apparently the prevailing view of the lower courts of this jurisdiction.

Hawaii has long recognized and continues to recognize the tenancy in common, the joint tenancy, and the tenancy by the entirety, as separate and distinct estates. *See Paahana v. Bila*, 3 Haw. 725 (1876). That the Married Women's Property

Act of 1888 was not intended to abolish the tenancy by the entirety was made clear by the language of Act 19 of the Session Laws of Hawaii, 1903 (now HRS § 509-1). *See also* HRS § 509-2. The tenancy by the entirety is predicated upon the legal unity of husband and wife, and the estate is held by them in single ownership. They do not take by moieties, but both and each are seized of the whole estate. *Lang v. Commissioner*, 289 U.S. 109 (1933).

A joint tenant has a specific, albeit undivided, interest in the property, and if he survives his cotenant he becomes the owner of a larger interest than he had prior to the death of the other joint tenant. But tenants by the entirety are each deemed to be seized of the entirety from the time of the creation of the estate. At common law, this taking of the "whole estate" did not have the real significance that it does today, insofar as the rights of the wife in the property were concerned. For all practical purposes, the wife had no right during coverture to the use and enjoyment and exercise of ownership in the marital estate. All she possessed was her contingent right of survivorship.

The effect of the Married Women's Property Acts was to abrogate the husband's common law dominance over the marital estate and to place the wife on a level of equality with him as regards the exercise of ownership over the whole estate. The tenancy was and still is predicated upon the legal unity of husband and wife, but the Acts converted it into a unity of equals and not of unequals as at common law. *Otto F. Stifel's Union Brewing Co. v. Saxy, supra; Lang v. Commissioner, supra.* No longer could the husband convey, lease, mortgage or otherwise encumber the property without her consent. The Acts confirmed her right to the use and enjoyment of the whole estate, and all the privileges that ownership of property confers, including the right to convey the property in its entirety, jointly with her husband, during the marriage relation. *Jordan v. Reynolds*, 105 Md. 288, 66 A. 37 (1907); *Hurd v. Hughes*, 12 Del. Ch. 188, 109 A. 418 (1920); *Vasilion v. Vasilion, supra; Frost v. Frost*, 200 Mo. 474, 98 S.W. 527 (1906). They also had the effect of insulating the wife's in-

terest in the estate from the separate debts of her husband. *Jordan v. Reynolds, supra.*

Neither husband nor wife has a separate divisible interest in the property held by the entirety that can be conveyed or reached by execution. *Fairclaw v. Forrest,* 130 F.2d 829 (D.C.Cir. 1942). A joint tenancy may be destroyed by voluntary alienation, or by levy and execution, or by compulsory partition, but a tenancy by the entirety may not. The indivisibility of the estate, except by joint action of the spouses, is an indispensable feature of the tenancy by the entirety. *Ashbaugh v. Ashbaugh,* 273 Mo. 353, 201 S.W. 72 (1918); *Newman v. Equitable Life Assur. Soc.,* 119 Fla. 641, 160 So. 745 (1935); *Lang v. Commissioner, supra.*

In *Jordan v. Reynolds, supra,* the Maryland court held that no lien could attach against entirety property for the separate debts of the husband, for that would be in derogation of the entirety of title in the spouses and would be tantamount to a conversion of the tenancy into a joint tenancy or tenancy in common. In holding that the spouses could jointly convey the property, free of any judgment liens against the husband, the court said:

> "To hold the judgment to be a lien at all against this property, and the right of execution suspended during the life of the wife, and to be enforced on the death of the wife, would, we think, likewise encumber her estate, and be in contravention of the constitutional provision heretofore mentioned, protecting the wife's property from the husband's debts.
>
> It is clear, we think, if the judgment here is declared a lien, but suspended during the life of the wife, and not enforceable until her death, if the husband should survive the wife, it will defeat the sale here made by the husband and wife to the purchaser, and thereby make the wife's property liable for the debts of her husband." 105 Md. at 295, 296, 66 A. at 39.

In *Hurd v. Hughes, supra,* the Delaware court, recognizing the peculiar nature of an estate by the entirety, in that the

husband and wife are the owners, not merely of equal interests but of the whole estate, stated:

"The estate [by the entireties] can be acquired or held only by a man and woman while married. Each spouse owns the whole while both live; neither can sell any interest except with the other's consent, and by their joint act and at the death of either the other continues to own the whole, and does not acquire any new interest from the other. There can be no partition between them. From this is deduced the indivisibility and unseverability of the estate into two interests, and hence that the creditors of either spouse cannot during their joint lives reach by execution any interest which the debtor had in land so held. . . . One may have doubts as to whether the holding of land by entireties is advisable or in harmony with the spirit of the legislation in favor of married women; but when such an estate is created due effect must be given to its peculiar characteristics." 12 Del. Ch. at 190, 109 A. at 419.

In *Frost v. Frost, supra,* the Missouri court said:

"Under the facts of the case at bar it is not necessary for us to decide whether or not under our married women's statutes the husband has been shorn of the exclusive right to the possession and control of the property held as an estate in entirety; it is sufficient to say, as we do say, that the title in such an estate is as it was at common law; neither husband nor wife has an interest in the property, to the exclusion of the other. Each owns the whole while both live and at the death of either the other continues to own the whole, freed from the claim of any one claiming under or through the deceased." 200 Mo. at 483, 98 S.W. at 528, 529.

We are not persuaded by the argument that it would be unfair to the creditors of either spouse to hold that the estate by the entirety may not, without the consent of both spouses, be levied upon for the separate debts of either spouse. No unfairness to the creditor is involved here. We agree with the court in *Hurd v. Hughes, supra:*

"But creditors are not entitled to special considera-
tion. If the debt arose prior to the creation of the estate,
the property was not the basis of credit, and if the debt
arose subsequently the creditor presumably had notice of
the characteristics of the estate which limited his right to
reach the property." 12 Del. Ch. at 193, 109 A. at 420.

We might also add that there is obviously nothing to
prevent the creditor from insisting upon the subjection of
property held in tenancy by the entirety as a condition prece-
dent to the extension of credit. Further, the creation of a
tenancy by the entirety may not be used as a device to defraud
existing creditors. *In re Estate of Wall*, 440 F.2d 215 (D.C.
Cir. 1971).

Were we to view the matter strictly from the standpoint of
public policy, we would still be constrained to hold as we have
done here today. In *Fairclaw v. Forrest, supra*, the court
makes this observation:

"The interest in family solidarity retains some influence
upon the institution [of tenancy by the entirety]. It is
available only to husband and wife. It is a convenient
mode of protecting a surviving spouse from inconvenient
administration of the decedent's estate and from the
other's improvident debts. It is in that protection the
estate finds its peculiar and justifiable function." 130
F.2d at 833.

It is a matter of common knowledge that the demand for
single-family residential lots has increased rapidly in recent
years, and the magnitude of the problem is emphasized by the
concentration of the bulk of fee simple land in the hands of a
few. The shortage of single-family residential fee simple
property is critical and government has seen fit to attempt to
alleviate the problem through legislation. When a family can
afford to own real property, it becomes their single most
important asset. Encumbered as it usually is by a first mort-
gage, the fact remains that so long as it remains whole during
the joint lives of the spouses, it is always available in its
entirety for the benefit and use of the entire family. Loans for
education and other emergency expenses, for example, may

be obtained on the security of the marital estate. This would not be possible where a third party has become a tenant in common or a joint tenant with one of the spouses, or where the ownership of the contingent right of survivorship of one of the spouses in a third party has cast a cloud upon the title of the marital estate, making it virtually impossible to utilize the estate for these purposes.

If we were to select between a public policy favoring the creditors of one of the spouses and one favoring the interests of the family unit, we would not hesitate to choose the latter. But we need not make this choice for, as we pointed out earlier, by the very nature of the estate by the entirety as we view it, and as other courts of our sister jurisdictions have viewed it, "[a] unilaterally indestructible right of survivorship, an inability of one spouse to alienate his interest, and importantly for this case, a broad immunity from claims of separate creditors remain among its vital incidents." *In re Estate of Wall, supra,* 440 F.2d at 218.

Having determined that an estate by the entirety is not subject to the claims of the creditors of one of the spouses during their joint lives, we now hold that the conveyance of the marital property by Kokichi Endo and Ume Endo, husband and wife, to their sons, Samuel H. Endo and Toru Endo, was not in fraud of Kokichi Endo's judgment creditors. *Cf. Jordan v. Reynolds, supra.*

Affirmed.

*Andrew S. Hartnett (Ueoka, Vail & Luna,* of counsel) for plaintiffs-appellants.

*George M. Takane and Eichi Oki* for defendants-appellees.

### DISSENTING OPINION OF KIDWELL, J.

This case has been well briefed, and the arguments against the conclusions reached by the majority have been well presented. It will not materially assist the court in resolving the issues for me to engage in an extensive review of the conflicting views. Appellants' position on the appeal was that

tenancy by the entirety as it existed at common law, together with all of the rights which the husband had over the property of his wife by virtue of the common law doctrine of the unity of the person, was recognized by the early decisions, *Paahana v. Bila*, 3 Haw. 725 (1876); *Von Hasslocher v. Executors of Robinson*, 3 Haw. 802 (1877); *Cummins v. Wond*, 6 Haw. 69 (1872); *Kuanalewa v. Kipi*, 7 Haw. 575 (1889); that the Married Women's Act of 1888 (now Ch. 573, HRS) destroyed the fictional unity of husband and wife, *First National Bank v. Gaines*, 16 Haw. 731 (1905); that the legislature has recognized the continuing existence of the estate of tenancy by the entirety, but has not defined the nature or the incidents of that estate, HRS § 509-1, 509-2; that at common law the interest of the husband in an estate by the entireties could be taken by his separate creditors on execution against him, subject only to the wife's right of survivorship, *Kuanalewa v. Kipi, supra*; and that the Married Women's Act merely eliminated any inequality in the positions of the spouses with respect to their interests in the property, thus depriving the husband of his former power over the wife's interest, without thereby altering the nature and incidents of the husband's interest.

I find the logic of Appellant's analysis convincing. While the authorities are divided, I consider that the reasoning of the cases cited by Appellant best reconciles the Married Women's Act with the common law. *Hiles v. Fisher*, 144 N.Y. 306, 39 N.E. 337 (1895); *Pope v. McBride*, 207 Ark. 940, 184 S.W. 2d 259 (1944); *Branch v. Polk*, 61 Ark. 388, 33 S.W. 424 (1895); *King v. Greene*, 30 N.J. 395, 153 A.2d 49 (1959); *Buttlar v. Rosenblath*, 42 N.J.Eq. 651, 9 Atl. 695 (1887); *Brownley v. Lincoln County*, 218 Ore. 7, 343 P.2d 529 (1959); *Ganoe v. Ohmart*, 121 Ore. 116, 254 Pac. 203 (1927); *Hoffmann v. Newell*, 249 Ky. 270, 60 S.W.2d 607 (1932); *Cole Mfg. Co. v. Collier*, 95 Tenn. 115, 31 S.W. 1000 (1895); *Raptes v. Cheros*, 259 Mass. 37, 155 N.E. 787 (1927).

The majority reaches its conclusion by holding that the effect of the Married Women's Act was to equalize the positions of the spouses by taking from the husband his common

law right to transfer his interest, rather than by elevating the wife's right of alienation of her interest to place it on a position of equality with the husband's. I disagree. I believe that a better interpretation of the Married Women's Acts is that offered by the Supreme Court of New Jersey in *King v. Greene*, 30 N.J. 395, 412, 153 A.2d 49, 60 (1959):

> It is clear that the Married Women's Act created an equality between the spouses in New Jersey, insofar as tenancies by the entirety are concerned. If, as we have previously concluded, the husband could alienate his right of survivorship at common law, the wife, by virtue of the act, can alienate her right of survivorship. And it follows that if the wife takes equal rights with the husband she must take equal disabilities. Such are the dictates of common equality. Thus the judgment creditors of either spouse may levy and execute on their separate rights of survivorship.

One may speculate whether the courts which first chose the path to equality now followed by the majority might have felt an unexpressed aversion to entrusting a wife with as much control over her interest as had previously been granted to the husband with respect to his interest. Whatever may be the historical explanation for these decisions, I feel that the resultant restriction upon the freedom of the spouses to deal independently with their respective interests is both illogical and unnecessarily at odds with present policy trends. Accordingly, I would hold that the separate interest of the husband in entireties property, at least to the extent of his right of survivorship, is alienable by him and subject to attachment by his separate creditors, so that a voluntary conveyance of the husband's interest should be set aside where it is fraudulent as to such creditors, under applicable principles of the law of fraudulent conveyances.