ESTATE OF PAULINE I. SUZUKI, DECEASED, PAUL L. H. YOSHIOKA, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Suzuki v. Commissioner
Docket No. 20099-89
United States Tax Court
T.C. Memo 1991-624; 1991 Tax Ct. Memo LEXIS 668; 62 T.C.M. (CCH) 1550; T.C.M. (RIA) 91624; December 16, 1991, Filed *668 Decision will be entered for the respondent. Katsuya Yamada, for the petitioner. Henry E. O'Neill, for the respondent. CLAPP, Judge. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in estate tax in the amount of $ 52,452 and an addition to tax under section 6651(a)(1) in the amount of $ 13,052. The issues for decision are whether petitioner is entitled to claim a deduction of $ 171,324 from decedent's gross estate, and whether petitioner is liable for an addition to tax for failure to file timely the estate tax return. We hold that petitioner is not entitled to the deduction and is liable for the addition to tax. All section references are to the Internal Revenue Code in effect at the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT We incorporate by reference the stipulation of facts and attached exhibits. Petitioner is the Estate of Pauline I. Suzuki (decedent). Decedent was a resident of Hilo, Hawaii, when she died on February 9, 1984. At the time of decedent's death, she was married to Norman Suzuki. Decedent's son from a prior marriage, Paul L. H. Yoshioka, *669 is the duly appointed personal representative of decedent's estate. On August 14, 1989, the date the petition in this case was filed, the personal representative resided in Hilo, Hawaii. On November 6, 1979, shortly before her marriage to Norman Suzuki, decedent established a revocable living trust. The trust agreement, which was not funded at this time, provided that decedent or her designee was to receive the net income and principal of the trust during her lifetime. Upon decedent's death with her son surviving, the trust was to terminate and all of the trust property, including any unpaid income, was to be distributed to her son. Sometime after her marriage to Norman Suzuki, decedent funded this trust with four parcels of real property. On November 28, 1983, decedent executed her last will and testament. At that time, decedent had been diagnosed as having inoperable cancer, and she knew that her death was imminent. According to the terms of the will, decedent's husband and son were each to receive one-half of the funds in her savings accounts at the time of her death. The remainder of all her property, except property held jointly with her husband, was left entirely to *670 her son. Decedent did not own any property jointly with her husband at the time of her death. On December 8, 1983, 10 days after decedent executed her will and more than 2 months before her death, decedent's son and her husband executed an Agreement In Contemplation of Probate (Agreement). The Agreement stated that "Suzuki and Yoshioka would like to settle their differences in an amicable manner without resolution to a lawsuit." The Agreement provided that Paul Yoshioka would pay Norman Suzuki $ 125,000 in five annual installments of $ 25,000, beginning 1 year from the date of his mother's death, and that he would transfer his mother's interests in two partnerships, Pacific Pastoral Company and Redrock Joint Venture, to Norman Suzuki. The values assigned to decedent's interests in these two partnerships in the estate tax return were $ 27,781 and $ 18,543, respectively. In exchange, Norman Suzuki agreed not to challenge the trust created by decedent, not to claim any interest in the property that was transferred to the trust, and to waive any rights of inheritance to the estate. On June 13, 1986, an estate tax return, Form 706, was filed on behalf of decedent. The return showed *671 the value of the total gross estate as $ 658,180. On Schedule K of the return, Debts of the Decedent, petitioner claimed a deduction in the amount of $ 171,324. This amount represented the $ 125,000 cash payment and the value of decedent's interests in the Pacific Pastoral Company and Redrock Joint Venture partnerships that were transferred to Norman Suzuki pursuant to the Agreement. Respondent has disallowed this amount as a deduction to the estate. OPINION The facts of this case are undisputed. Although decedent bequeathed one-half of all her savings accounts to her husband, the only funded accounts were accounts that she owned jointly with her son. Thus, decedent's son was, in effect, the sole beneficiary under her will. Pursuant to their Agreement, decedent's son agreed to pay to her husband cash and property interests worth $ 171,324. Deduction From Gross Estate
The issue presented is whether this payment to decedent's husband, purporting to be a settlement of his claims to her estate, qualifies as a deductible expense of the estate either under section 2056 as a marital deduction, or under section 2053 as a claim against the estate, or as an administration expense. *672 1. Marital Deduction
Section 2056(a) provides in pertinent part that: the value of the taxable estate shall * * * be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.
In this case, no interest has passed to the surviving spouse through the will of decedent or through the revocable living trust created by decedent. However, section 20.2056(e)-2(d)(2), Estate Tax Regs., provides that: If as a result of the controversy involving the decedent's will, or involving any bequest or devise thereunder, a property interest is assigned or surrendered to the surviving spouse, the interest so acquired will be regarded as having "passed from the decedent to his surviving spouse" only if the assignment or surrender was a bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate. Such a bona fide recognition will be presumed where the assignment or surrender was pursuant to a decision of a local court upon *673 the merits in an adversary proceeding following a genuine and active contest. However, such a decree will be accepted only to the extent that the court passed upon the facts upon which deductibility of the property interests depends. If the assignment or surrender was pursuant to a decree rendered by consent, or pursuant to an agreement not to contest the will or not to probate the will, it will not necessarily be accepted as a bona fide evaluation of the rights of the spouse.
Petitioner contends that decedent's husband had valid claims under Hawaii law to a share of decedent's estate, namely, under provisions that established his right to homestead and family allowances, exempt property, and a right to take an elective share of one-third of the net estate in lieu of the property interests awarded under the will. Haw. Rev. Stat. sec. 560:2-401 to 403, 560:2-201(a) (1976). Petitioner claims that the settlement was made in recognition of these valid claims, and therefore the payment is an interest in property passing from decedent to the surviving husband which qualifies for the marital deduction. Respondent takes the position that the estate is not entitled to a marital deduction. *674 Respondent argues that there is great disparity between the value of cash and property interests received by decedent's husband pursuant to the Agreement, and the value of that which he relinquished -- an elective share of one-third of decedent's net estate. Under the Hawaii Uniform Probate Code, net estate is defined as the estate which would be disposed of by decedent's will, reduced by specified enforceable claims. Haw. Rev. Stat. sec. 560:2-202 (1976). In this case, decedent's net estate does not include the property that she had transferred to her trust. As a result, the value of the net estate is de minimis. Any marital deduction, respondent argues, would be limited to a value equal to one-third of the net estate. Respondent argues also that the property received by decedent's husband did not "pass" from decedent to him. We must first consider whether the Agreement operated as an amendment to decedent's will. In determining whether a settlement agreement is a "bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate," courts examine whether or not the agreement was made in good faith as a result of arm's-length negotiations. Estate of Barrett v. Commissioner, 22 T.C. 606, 609 (1954). *675 Section 20.2056(e)-2(d)(2), Estate Tax Regs., requires that the surrendering of a property interest be in settlement of a "controversy." The Fifth Circuit stated in Citizens & Southern National Bank v. United States, 451 F.2d 221, 225-226 (5th Cir. 1971), "We do not think, however, that the regulation encompasses only those settlements achieved at the end of an armageddon." Although it is clear that the respective interests of decedent's husband and her son were adverse, the record in the instant case does not reveal any of the circumstances surrounding the settlement and leading up to the execution of the Agreement. The Agreement provides only that decedent's husband will not challenge or claim any interest in the trust property, and will waive any rights of inheritance to the estate of decedent. There is no evidence to indicate that there was ever an actual dispute between decedent's husband and her son, or to indicate the nature or merit of the claims to the trust property that decedent's husband surrendered. In our opinion, the facts are not sufficient to demonstrate that, for purposes of the regulation, an actual controversy existed prior to the execution *676 of the Agreement. In Ahmanson Foundation v. United States, 674 F.2d 761, 775 (9th Cir. 1981), the Ninth Circuit said that "a good faith settlement * * * must be based on an enforceable right, under state law properly interpreted, in order to qualify as 'passing' pursuant to the estate tax marital deduction." Under Hawaii law, decedent's husband did have an enforceable right to elect to receive one-third of her net estate. Haw. Rev. Stat. sec. 560:2-201(a) (1976). However, the value of the net estate, as defined by State statute, was negligible. The trust property, which the estate tax return showed had a date of death value of almost $ 500,000, was not disposed of by decedent's will but was disposed of by decedent's trust. Paragraph 4 of the trust stated that it was to terminate upon decedent's death with her son surviving, at which time "the Trustee shall transfer all of the trust property, including any unpaid income, absolutely and free from any trust to the Settlor's son, PAUL L. H. YOSHIOKA * * *." Therefore, the trust property was not a part of the net estate. Haw. Rev. Stat. sec. 560:2-202 (1976). It is true, however, that if decedent's husband had *677 legitimate claims to invalidate her property transfers to the trust, these properties might have been placed back into her probate estate. Yet, there is no evidence presented by petitioner to establish what claims decedent's husband might have had to invalidate the property transfers. Moreover, two of the four parcels of real property transferred to the trust by decedent were held by decedent and her son jointly. The record is void of any evidence indicating whether these two properties were held by decedent and her son in joint tenancy or as tenants in common. However, if the properties were held in joint tenancy, then upon decedent's death, her son would own the entire interest in the properties, and these properties still would not have been disposed of by decedent's will. See Sawada v. Endo, 57 Haw. 608, 561 P.2d 1291 (1977). The burden is on petitioner to prove that the estate is entitled to a marital deduction. Based upon the record in this case, it appears that decedent's husband only had enforceable rights to one-third of her net probate estate. Thus, he surrendered very little in exchange for the interests he received under the Agreement. *678 There is no evidence of an actual controversy. Under these circumstances and on the record before us, we believe that the Agreement was nothing more than a voluntary payment, concluded without duress, of unsatisfied minor though legitimate claims. We find that the Agreement does not represent a "bona fide recognition of enforceable rights" of decedent's husband in her estate and that the payment to him was a gratuitous one not subject to the marital deduction. Next, we consider whether decedent's estate should be allowed an estate tax marital deduction for property passing to a surviving spouse which was not included in decedent's gross estate for estate tax purposes. Section 2056(a) explicitly states that the estate tax marital deduction is only available "to the extent that such interest is included in determining the value of the gross estate." The problem here is with the $ 125,000. At trial, decedent's son testified that he borrowed money over a period of years from friends and family to pay decedent's husband the $ 125,000 that they agreed upon. To repay these friends and family members, he mortgaged certain properties. Thus, it appears that the $ 125,000 was not included *679 in the gross estate for estate tax purposes and, therefore, cannot qualify for the marital deduction. Although the two partnership interests were included in determining the value of the gross estate, these interests passed from the estate to decedent's son. Because decedent's son, and not the estate, transferred these interests to decedent's husband, the estate is not entitled to a marital deduction for the value of the partnership interests. 2. Claims Against the Estate
The value of the taxable estate shall be determined, inter alia, by deducting from the value of the gross estate amounts for claims against the estate which represent personal obligations of the decedent at the time of her death, and which are allowable under the laws of the jurisdiction in which the estate is being administered. Sec. 2053(a)(3); secs. 20.2053-1(a)(1), 20.2053-4, Estate Tax Regs. To be deductible under section 2053(a), a claim must represent a creditor's claim against the estate rather than a beneficiary's claim to a distributive interest in the estate. Estate of Lazar v. Commissioner, 58 T.C. 543, 552-553 (1972). The Agreement, which forms the basis for the claimed *680 deduction in this case, purportedly was made to compromise a claim to share "in" decedent's estate as distinguished from a claim "against" the estate. Further, the Agreement was signed by decedent's son in his individual capacity and not as the personal representative of the estate. The "differences" that the Agreement seeks to resolve are between decedent's son and her husband. There is no evidence that decedent ever was made aware of the Agreement. At the time of her death, decedent was not personally obligated to pay her husband $ 125,000 and her interests in two partnerships. The relationship between decedent and her husband was never one of debtor and creditor. Accordingly, petitioner is not entitled to deduct $ 171,324 as a claim against the estate. 3. Administration Expenses
Section 2053(a)(2) provides a deduction from a decedent's gross estate for expenses incurred in the administration of the estate. The expenses are limited to those that are actually and necessarily incurred in the administration of the estate, such as in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. Such expenses would include, for *681 example, executor's commissions and attorney's fees. Sec. 20.2053-3(a), Estate Tax Regs. The payment to decedent's husband was not "actually and necessarily incurred" in the administration of decedent's estate. It was a payment incurred by decedent's son for his personal, altruistic reasons. Therefore, the payment made pursuant to the Agreement is not a deductible administration expense. Addition to tax
Finally, respondent has determined that petitioner did not file timely the estate tax return and, therefore, is liable for an addition to tax under section 6651(a)(1). Decedent died on February 9, 1984. Section 6075(a) requires that an estate tax return be filed within 9 months after the date of decedent's death. In this case, the return was due on or before November 9, 1984, yet petitioner filed the return on June 13, 1986. There were no requests for an extension of time in which to file, and petitioner has not presented any evidence to establish that the failure to file timely was due to reasonable cause and not due to willful neglect. See secs. 6081 and 6651(a)(1). Accordingly, petitioner is liable for the addition to tax under section 6651(a)(1). Decision will *682 be entered for the respondent.