# IN THE MATTER OF THE ESTATE OF DAVID AU, aka CHUNG WO AU, aka AH LAN LAU, DECEASED

## NO. 6202

AUGUST 23, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR and KIDWELL, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

This interlocutory appeal[1] is from a probate proceeding concerning the estate of David Au. The parties to this appeal are the estate's executrix, appellant Nui Sin Au,[2] and decedent David Au's wife, appellee Ellen Ching Au. The court below ruled that $180,000 in proceeds from the sale of land held by decedent and appellee as tenants by the entirety was also property held by the entirety. It therefore concluded that the proceeds belonged to appellee because she survived the decedent. The court below further ruled that $1,469 in money gifts received at decedent's funeral belonged to appellee.

We affirm.

---

[1] Pursuant to HRS §§ 602-5(1)(1976), 641-1(b)(1976), and H.R.Civ.P. Rule 73(a).

[2] Appellant is the widow of Kam Hing Au, David Au's son.

## FACTS

Decedent and appellee owned a parcel of land as tenants by the entirety. On May 9, 1974, they executed an agreement to sell that land to the Chinens and the Kohatsus, two married couples, for $180,000. By paragraph "R" of the agreement, each married couple was to receive an undivided one-half interest in the land, with that one-half interest to be held by the husband and wife as tenants by the entirety. Paragraph "T" of the agreement made the agreement binding, *inter alios*, upon the respective heirs of the sellers (decedent and appellee) and of the purchasers (the Chinens and the Kohatsus).

At the time he signed the agreement, decedent was being treated for cancer and knew that he was terminally ill. On May 26, 1974, seventeen days after the agreement was signed, decedent died of cancer.

By May 26, 1974, title to the land had not yet passed to the purchasers. Decedent and appellee, however, had received $40,000 of the $180,000 purchase price. That $40,000 was placed in decedent and appellee's joint checking account which provided for a right of survivorship with respect to the monies placed in the checking account.

At decedent's funeral, appellee received $1,469 in money gifts, of which the "David Au Family" was named the recipient of $1,083; appellee, $269; no donee, $112; and the decedent's daughter Jean, $5. Although appellee paid funeral expenses of $5,114.25, she did not file a claim for reimbursement with nor receive any reimbursement from decedent's estate.

In a will executed by decedent on October 19, 1972, and admitted to probate on December 20, 1974, decedent gave one-half of his estate to appellee and the other half to seven other individuals, including appellant.

## ISSUES

Appellant raises two issues: First, whether personalty proceeds from the sale of land are held in common or by the

entirety where the land was owned by the entirety;[3] and second, whether money gifts received at a funeral are the property of decedent's estate.

### DISCUSSION

The first issue concerns the character of the $180,000 in sale proceeds while the second issue deals with the ownership of $1,469 in funeral gifts.

## I. *The sale proceeds.*

Appellant argues that the personalty proceeds of entirety property are held in common rather than by the entirety.[4] She contends that HRS §§ 509-1, 2 (1976) [hereinafter cited without (1976)], establish a presumption in favor of the creation of a tenancy in common in any property whenever property is granted, conveyed, or devised.[5] That presumption, she declares, is rebutted only by a clear intent in the instrument granting, conveying, or devising the property to create a different kind of tenancy. Since the agreement to sell the land showed no intent that decedent and appellee would take the sale proceeds as tenants by the entirety, she concludes that the $180,000 in sale proceeds was held in common tenancy.

We reject appellant's argument.

HRS § 509-1 provides in part:

All grants, conveyances, and devises of *land or of any interest therein,* made to two or more persons, shall be construed to create estates in common and not in joint tenancy or by entirety, unless it manifestly appears from

---

[3] Here, we assume *arguendo* that the doctrine of equitable conversion applies to this case. Decedent and appellee are thus viewed as having had equitable title to the sale proceeds of $180,000 at the time of decedent's death.

[4] A tenancy by the entirety can exist in certain personal as well as real property. *See* Re Dean Trust, 47 Haw. 629, 394 P.2d 432 (1963)(shares in a land trust).

[5] Appellant relies, in part, upon dicta in Peters v. Alsup, 95 F. Supp. 684, 692 (D. Hawaii 1951).

the tenor of the instrument that it was intended to create an estate in joint tenancy or by entirety . . . .

(Emphasis added.) Not only does HRS § 509-1 on its face apply solely to real property but the legislative history of this statute discloses that it concerned "the ownership of real property." The Judiciary Committee Report, 1903 Hawaii Senate Journal 149 (commenting on the earlier and virtually identical version of this statute). Therefore, personal property such as $180,000 is unaffected.

HRS § 509-2[6] provides in part: .

Land, or any interest therein, or any other type of property or property rights or interests or interest therein, may be conveyed . . . and *each such instrument shall be construed as validly creating a* joint tenancy, tenancy by the entirety, *tenancy in common*, or single ownership, as the case may be, *if the tenor of the instrument manifestly indicates such intention.*

(Emphasis added.)

As it presently reads, HRS § 509-2 states no presumption in favor of a tenancy in common.[7] *Cf.* RLH § 345-2 (1955). Thus, neither HRS §§ 509-1 nor 509-2 will aid appellant.

---

[6] HRS § 509-2. Creation of joint tenancy, tenancy by the entirety, and tenancy in common. Land, or any interest therein, or any other type of property or property rights or interests or interest therein, may be conveyed by a person to himself and another or others as joint tenants, or by a person to himself and his spouse, or by spouses to themselves, as tenants by the entirety, or by joint tenants to themselves and another or others as joint tenants, or tenants in common to themselves or to themselves and another or others as joint tenants, or by tenants by the entirety to themselves or themselves and another or others as joint tenants or as tenants in common, or by one tenant by the entirety to his spouse of all of his interest or interests, without the necessity of conveying through a third party, and each such instrument shall be construed as validly creating a joint tenancy, tenancy by the entirety, tenancy in common, or single ownership, as the case may be, if the tenor of the instrument manifestly indicates such intention.

[7] In fact the purpose of HRS § 509-2 was not to establish a presumption in favor of a particular type of tenancy. HRS § 509-2 was designed to permit owners of property to convey directly to themselves, to others, or to themselves and others without the necessity of first conveying through a third person or "straw man." 1957 Hawaii House Journal at 911; 1957 Hawaii Senate Journal at 525; 1941 Hawaii House Journal at 1423 (commenting on the earlier version of HRS § 509-2); 1941 Hawaii Senate Journal at 1251 (same).

Even assuming that there is a presumption in favor of the *creation* of a tenancy in common in personal property, it would not apply to personalty proceeds from the sale of property held by the entirety because such *proceeds* are a derivative or an extension of the entirety property, and are not a newly created interest.[8] Furthermore, we observe that

> [w]here . . . personalty can be held by the entireties, the great weight of authority is that, absent a contrary arrangement by the parties, an estate by the entireties preexisting in [real] property continues automatically in its [personal property] derivatives on disposition. That rule has been applied in a variety of contexts, including cash sales of realty . . . .

*In re Estate of Wall,* 440 F.2d 215, 220 (D.C. Cir. 1971) (footnotes omitted); *accord, Crawford v. United States Fidelity and Guaranty Co.,* 139 So.2d 500, 502 (Fla. Dist. Ct. App. 1962); *Smith v. Tipping,* 349 Mass. 590, 592, 211 N.E.2d 231, 232 (1965); *In re Baker's Estate,* 359 S.W.2d 238, 244 (Mo. Ct. App. 1962); *Burt v. Edmonds,* 224 Tenn. 403, 409-10, 456 S.W.2d 342, 345 (1970); *Oliver v. Givens,* 204 Va. 123, 126-27, 129 S.E.2d 661, 663 (1963); Annot., 64 A.L.R.2d 8, 47-57 (1959) & supp.

We find these cases more persuasive than those cited by appellants.[9] Since proceeds from the sale of land held by the entirety are, in effect, a substitute for the land, we presume that these proceeds retain the entirety characteristic that the land itself had.

This presumption seems especially appropriate under the facts of this case for at the time decedent and appellee executed the agreement to sell their land, decedent was terminally ill. It should have been expected that appellee would

---

[8] For example, we are not dealing with a gift or legacy of $180,000 to a married couple.

[9] We note that the cases cited by appellant either involve joint tenancies or involve jurisdictions where an estate by the entirety is disallowed in personalty. *See, e.g.,* Smith v. Tang, 100 Ariz. 196, 412 P.2d 697 (1966) (joint tenancy); Panushka v. Panushka, 221 Or. 145, 349 P.2d 450 (1960)(no personalty held by the entirety); In re Baker's Estate, 247 Iowa 1380, 78 N.W.2d 863 (1956) (joint tenancy).

survive decedent and thereby obtain sole title to the land. In fact, decedent died seventeen days after the agreement was executed. It appears unlikely that appellee and decedent, at the time of decedent's illness, would have wanted the $180,000 in sale proceeds to be treated as common property. This would have defeated their purpose in having the land held by the entirety, which was to give sole ownership of the land to the survivor upon the death of either decedent or appellee. As the sole owner, the survivor would then be entitled to all the proceeds from the sale of the land.

Of course, if decedent and appellant both intended that the $180,000 in sale proceeds would pass to them as tenants in common, that intention would prevail.[10] But we find no such intention.[11] Absent a contrary intent by both spouses, personalty proceeds from a sale of land held by the entirety are

---

[10] Both spouses must agree to a termination of a tenancy by the entirety for one spouse alone cannot remove the entirety characteristic:

> The indivisibility of the estate, except by joint action of the spouses, is an indispensable feature of the tenancy by the entirety.

Sawada v. Endo, 57 Haw. 608, 614, 561 P.2d 1291, 1295-96 (1977); *accord*, Re Dean Trust, 47 Haw. 629, 644, 394 P.2d 432, 440 (1964).

[11] An agreement to sell land held by the entirety does not in itself indicate a married couple's intention to receive money held in common for land held by the entirety. That act is more reasonably interpreted as an attempt to substitute rights in money for rights in land with the same form of ownership (tenancy by the entirety) to continue as before.

We disagree with appellant's contention that the term "heirs" in paragraph "T" of the agreement of sale shows an intention to take the $180,000 as property in common because tenants by the entirety lack heirs. Paragraph "T" made the agreement binding, *inter alios*, upon the respective heirs of the sellers, decedent and appellee, and of the purchasers, the Chinens and the Kohatsus. But the term "heirs" only refers to the heirs of the survivor of decedent and appellee who would obtain sole title to the land upon the death of the other. Also, since paragraph "R" provides that the Chinens and the Kohatsus take their respective interests by the entirety, it is clear that "heirs" in paragraph "T" does not indicate a common tenancy.

Appellant's final contention that decedent's will shows an intention to take the proceeds in common is without merit. The will not only fails to mention the land in question, but even if it did, it would only shed light on decedent's intention alone, not the intention of both decedent and appellee. Both spouses must agree to terminate an estate by the entirety. Sawada v. Endo, 57 Haw. 608, 614, 561 P.2d 1291, 1295-96 (1977).

also property held by the entirety. We therefore hold that the $180,000 in sale proceeds was entirety property.

II. *The funeral gifts.*

Appellant argues that decedent's estate is entitled to the $1,469 in monies appellee received at decedent's funeral. We disagree. It is undisputed that appellee paid decedent's funeral expenses of $5,114.25, an amount not reimbursed in whole or in part by decedent's estate. We view the $1,469 as having been used to pay, in part, for the $5,114.25 in funeral expenses. Funeral gifts may be used to pay for funeral expenses. The funeral gifts being less in dollar amount than the funeral expenses, there is no remainder for appellant to claim, assuming her right to claim any remainder.

Affirmed.

*Ronald G. S. Au* for Appellant.

*Robert M. Ehrhorn, Jr. (Okamura, Takushi, Funaki & Wee* of counsel) for Appellee.