ALISON M. VAUGHAN, formerly known as ALISON M.
WILLIAMSON, Plaintiff-Appellee, *v.* ROBERT J.
WILLIAMSON, Defendant-Appellant

NO. 6461

DECEMBER 17, 1980

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY BURNS, J.

Defendant-Appellant Robert J. Williamson[1] (Robert) appeals the lower court's judgment entered on November 26, 1976.

Robert and Plaintiff-Appellee Alison M. Vaughan, formerly Alison M. Williamson, (Alison), were married in 1944. They had four children: Robert, Jr., born in 1944; Jane, born November 30, 1950; Roberta, born November 13, 1954; and Peter, born March 22, 1958.

In 1967 Alison commenced a divorce action against Robert in Massachusetts. Robert was served in Massachusetts and he appeared in the action with an attorney. Robert left Massachusetts prior to a decision on the matter and he has not returned. On November 27, 1967 the Massachusetts court entered an interlocutory decree of divorce which awarded the custody of Jane, Roberta and Peter to Alison and required Robert to pay to Alison "for the support of herself and said minor children the sum of one hundred and seventy dollars each week, all until the further order of the Court". The decree contained no orders concerning the division and distribution of the property of the parties or the payment of costs and attorney's fees. The interlocutory decree became absolute "upon and after the expiration of six months" from its entry.

At the time of their divorce, the parties jointly owned corporate stocks and a residence in Massachusetts which contained household goods and furniture.

The corporate stocks were bequeathed to Robert by his aunt. Distribution occurred in March 1964. The executor registered the stocks in joint names and Robert did not object.

---

[1] Appellant was represented by counsel in the lower court but on this appeal he is proceeding *pro se*.

Since the divorce, Robert has accumulated the dividend checks without cashing them.

Alison remarried on December 4, 1969.

Alison initiated a partition suit in Massachusetts and sometime between September 1969 and May 1970 the residence was sold for a gross of $60,000.00. The Massachusetts court paid out the $60,000.00 proceeds as follows:

| | | |
|---|---|---|
| 1. | Commissioner's Expenses/Charges | $ 500.00 |
| 2. | Danvers Savings Bank | 19,245.72 |
| 3. | Town of Hamilton | 1,085.40 |
| 4. | Town of Hamilton | 28.00 |
| 5. | Albert Pitcoff, Esq. | 269.00[2] |
| 6. | Albert Pitcoff, Esq. | 5,425.00[3] |
| 7. | Woodman Insurance Agency | 240.00 |
| 8. | Foley & Carey, Attorneys | 1,086.62 |
| 9. | Frederick S. Moseley, III | 14,000.00 |
| 10. | Frederick S. Moseley, III | 453.33 |
| 11. | Robert Greeley, Attorney | 578.83 |
| 12. | Berkal & Berkal, Attorneys | 917.93 |
| 13. | James Santry, Attorney | 6,065.60 |
| 14. | George Chansky, Attorney | 291.50 |
| 15. | John Bunker, Attorney | 396.34 |
| 16. | Michael Goshko, Attorney | 329.31 |
| 17. | John H. Green, Attorney | 200.00 |
| 18. | Michael J. Harrington, Attorney | 1,747.25 |
| 19. | Decree of the Court — Eq. 522 | 6,311.75[4] |
| 20. | Deposited in Salem 5¢ Savings Bank | 828.42 |

On three occasions after the divorce became final, Alison went back to the Massachusetts divorce court and obtained judgment-execution decrees for arrearages determined to be due: September 13, 1968, $5,770.00; February 25, 1970, $7,480.00; February 6, 1976, $26,817.50. These totalled $40,067.50. On each occasion Robert received due notice of the proceedings prior to the proceedings, but on those occasions he was not a resident of, nor was he personally served in, Massachusetts.

In 1975, Alison commenced an action against Robert under the Uniform Reciprocal Enforcement of Support Acts

---

[2] [3] These related to repayment of a $5,000.00 loan to repair the house.

[4] This related to a $5,858.00 expenditure by Alison to prevent foreclosure and for repairs.

(URES) of Massachusetts and Hawaii (HRS chapter 576). On April 29, 1975, our family court ordered Robert to pay to Alison support for Peter in the amount of $100.00 per month commencing May 1, 1975.

On February 13, 1975, Alison filed in the lower court a "Complaint to Establish Foreign Judgment and to Enforce Payment" asking that the Massachusetts divorce decree be established as a foreign judgment and enforced; that the court determine the child support and alimony arrearage and order it paid; that the court order Robert to pay Alison one-half (½) the value of the corporate securities; and for an award of costs and attorney's fees. The complaint did not ask for recognition or enforcement of the judgment-executions. However, the subsequent record indicates that Alison was in fact also asking the court to give full faith and credit to the three judgment-executions.

Robert did not file a counterclaim but did request the court to credit him with his share of the proceeds of the sale of the residence, to award him 100% of the corporate stocks and to credit him with the value of personal property in Alison's possession at the time of the divorce.

On November 26, 1976, the lower court entered findings of fact and conclusions of law which found the above facts and:

1. Stated that Alison is entitled to enforce the three judgment-executions totalling $40,067.50.

2. Held that Robert was barred under the collateral estoppel doctrine from claiming an offset against the arrearages which the Massachusetts court determined to be due because he failed to appear and claim the offset in the Massachusetts arrearage proceedings; and

3. Held that because the Massachusetts court failed to do so, it had authority under HRS § 580-47[5] to divide the securities.

---

[5] HRS § 580-47 Support orders; division of property. Upon granting a divorce, the court may make such further orders as shall appear just and equitable . . . finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint or separate. In making such further orders, the court shall take into

4. Said nothing about Robert's request for a credit for his share of the household goods and furniture.

5. Said nothing about Robert's request for a credit for his share of the proceeds from the sale of the residence.

6. The lower court entered judgment which: (a) ordered Robert to pay Alison $40,067.50, together with 6% interest from April 25, 1975, plus costs; (b) awarded Alison a 20% interest in all securities in the joint names of the parties and in all dividends and interest paid since November 27, 1967 and awarded Robert the other 80%.

The lower court applied the $40,067.50 figure after concluding that mathematically the amount should have been $44,370.00, based on the following assumptions: that each recipient was entitled to ¼ × 170 or 42.50 per week; that Alison was not entitled to alimony after December 4, 1969, the date of her remarriage; that Jane was not entitled to child support after her 21st birthday on November 30, 1971; that Roberta was not entitled to child support after July 1, 1974, the date Massachusetts reduced the age of majority to 18; and that Robert's obligation to pay child support for Peter from and after April 25, 1975 is covered in Alison's URES case.

Robert cites five issues on appeal. We will deal with them one by one.

I.

Robert contends that the lower court pre-judged the issues and did not consider all the evidence.

Upon review of the record, we conclude that the lower court gave due consideration to all of the evidence prior to entering its findings, conclusions and judgment in this case.

II.

Robert claims that the court below erred in enforcing the judgment-executions because he alleges they were obtained

consideration the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case,. . . .

by fraud. However, it appears that the "fraud" he complains of concerns the Massachusetts court's entering of the $170.00 per week support order at the time of the divorce, when he was unemployed. He asserts that Alison misrepresented his employment situation to the court at that time. His counsel below, however, stipulated that the parties were lawfully divorced and no argument, evidence or testimony was presented below on this point except for Robert's naked and unsupported assertion. Furthermore, proposed findings of fact submitted by his counsel below asserted that the Massachusetts court had proper jurisdiction in granting the divorce and in ordering the $170.00 per week support. The other basis on which Robert claims fraud appears to be an assertion that he did not receive notice of the hearings held in Massachusetts concerning the various judgment-executions. We say "appears to be" because although Robert testified below that he had received very little of any mail that had been sent to him in care of his brother in Indiana (the only permanent address known to Alison and the children after the divorce), he did not specifically state that he did not receive notice of the hearings. The executions in the record indicate that they were granted after due notice and hearing, and the Massachusetts court docket sheet contains notations indicating returns of service for each of the first two executions. The court below found as facts that the issuance of each of the executions was preceded by due notice to Robert and a hearing. We hold that these findings of fact, which we construe Robert's argument to attack, are not clearly erroneous and should not be set aside. *Iaea v. Iaea*, 59 Haw. 648, 586 P.2d 1015 (1978).

III.

Robert contends that the lower court erred in not awarding him 100% of the corporate stocks which his aunt's will bequeathed to him. We disagree.

Under Massachusetts law, a conveyance to husband and wife creates a tenancy by the entirety unless a contrary intent appears from the face of the instrument, *Franz v. Franz*, 308

Mass. 262, 32 N.E.2d 205 (1941), and a divorce changes a tenancy by the entirety into a tenancy in common.[6] *Bernatavicius v. Bernatavicius*, 259 Mass. 486, 156 N.E. 685 (1927). No distinction is made between real property or personal property. Thus, the effect of the Massachusetts decree of divorce was to make Robert and Alison tenants-in-common of not necessarily equal[7] shares of both the real property and the personal property.

In Hawaii and in the majority of the states, the entry of a divorce decree is conclusive as to the division and distribution of the real and personal property of the parties even when it is silent in that respect.[8] Apparently the rule in Massachusetts is otherwise. According to *Maze v. Mihalovich*, Mass. App., 387 N.E.2d 196 (1979), the division of property issue may be litigated in proceedings after entry of the divorce decree in situations where the property rights of the parties have not been previously adjudicated.

Thus we have a situation where the Massachusetts divorce decree is not conclusive as to the division of property. As between the parties, therefore, the issue could still be litigated. In such a situation, a circuit court judge sitting in family court may, upon request by one of the parties, when *in personam* jurisdiction is present over both of the parties, complete the termination of the marital partnership by dividing and distributing the parties' property. The lower court divided these shares applying Hawaii's procedural and substantive law. We find no error in the lower court's choice of law or in its application.

IV.

Robert contends that the lower court erred in not crediting him with some of the value of the jointly owned personal property in Alison's possession when he left Massachusetts.

---

[6] Hawaii's rule is the same. *Chock v. Chock*, 39 Haw. 657 (1953).

[7] *See Asker v. Asker*, Mass. App., 396 N.E.2d 704, 707, n. 3 (1979).

[8] *See* HRS § 580-56(a) and 24 AM. JUR. 2d *Divorce and Separation* § 662 (1966).

Our holding in III, *supra*, is applicable to this issue. However, the lower court did not make any determination with respect to the division and distribution of this property. It should have and, upon remand, it should do so.

### V.

Robert contends the lower court erred in not crediting him with some of the net proceeds from the sale of the residence. We agree.

The document by which the Essex County, Massachusetts, Probate Court, in Docket No. 300606, appointed a commissioner to sell the residence stated that Alison owned one-half (½) and Robert owned one-half (½), both as tenants-in-common. We conclude that unlike the parties' personal property, the title to the real estate or to the proceeds thereof was thereby determined as being half-half (½-½).

Some of the payments out of the proceeds of sale were for unquestionably legitimate expenses or debts against the property or joint debts. Others are questionable:

1. The $14,453.33 to Frederick S. Moseley, III, relates to money Alison used to purchase a residence in her own name after the marital residence was sold. This appears to be an expenditure for Alison's personal benefit.

2. The $6,065.60 to James Santry, attorney, was for wife's attorney's fees in the divorce case. The $1,747.25 to Michael J. Harrington, attorney, was for Robert's attorney's fees in the divorce case. There is nothing in the record indicating that either party was obligated to pay for the attorney's fees and costs of the other.

3. Alison contends that the $200.00 payment to John H. Green, attorney, is chargeable to Robert because Mr. Green was Robert's court-appointed agent with respect to the sale.

4. Alison contends that the $5,694.00 payment to Albert Pitcoff, Esq., is an amount chargeable to Robert because it related to repairs of damages to the house caused by Robert.

The Massachusetts court had *quasi in rem* jurisdiction to sell the residence and dispose of the proceeds. 59 AM. JUR. 2d *Partition* § 67 (1971). Robert was notified of the proceedings. The issue before us is whether the Hawaii court may properly inquire into the disposition of the proceeds to determine whether they were chargeable against one or the other and whether it may then make corresponding offsets against child support and alimony arrearages. The answer is no. This issues in that case are *res judicata* and not subject to collateral attack. We are required by the Constitution of the United States to give full faith and credit to the judicial proceedings of our sister states. 47 AM. JUR. 2d *Judgments* § 1224 (1969).

However, the record indicates that Alison agreed that the court should give Robert credit for what she agreed was his net share of the proceeds. We think the lower court should have incorporated her agreement into its decision.

Excluding items 9, 10 and 13 which are attributable to Alison's account and 5, 6, 17 and 18 which Alison argues are attributable to Robert's account, the joint expenses total $31,011.40. That leaves $28,988.60 (or $14,494.30 each) for division between the parties. The expenses chargeable to Robert's account total $7,641.25. Therefore, Alison has indicated a willingness to credit him with $14,494.30 minus $7,641.25 or $6,853.05 and he should be so credited.

## CONCLUSION

We affirm the lower court's judgment entered on November 26, 1976 so far as it goes, but we remand this case to the lower court for further action as follows:

1. To enter an order establishing the Massachusetts divorce decree as a foreign decree entitled to enforcement in Hawaii;

2. To credit Robert with $6,853.05 as against the $40,067.50 arrearages owed to reflect his net share of the net proceeds from the sale of the residence; and

3. To finally divide and distribute all marital property which has not been divided and distributed.

*Robert J. Williamson*, defendant-appellant, pro se.
*John P. Gillmor* for plaintiff-appellee.