GARY M. HANAGAMI, individually, and as Personal Representative of the Estate of GARY M. HANAGAMI aka MASAYUKI HANAGAMI; et al., Plaintiffs, *v.* CHINA AIRLINES, LTD., Defendant-Appellant, Cross-Appellee, and UNIT RIG & EQUIPMENT COMPANY, Defendant-Appellant, Cross-Appellee, and PAN AMERICAN WORLD AIRWAYS, INC., Defendant-Appellant, Cross-Appellee, and STATE OF HAWAII, DEPARTMENT OF AIRPORTS, AS ROE GOVERNMENTAL ENTITY I, et al., Defendants

NO. 9265

(CIVIL NO. 55981)

SEPTEMBER 26, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

358

*Per Curiam.* The personal representative and survivors (plaintiffs) of Gary M. Hanagami (Hanagami), deceased, the employee of Pan American World Airways, Inc. (Pan Am), brought a wrongful death action against China Airlines, Ltd. (CAL), Unit. Rig and Equipment Company (Unit Rig), Pan Am, and the State of Hawaii. CAL and Unit Rig, the alleged third party tortfeasors, cross-claimed against Pan Am claiming that Hanagami's death was caused by Pan Am's negligence, and therefore, Pan Am is barred from recovering any workers' compensation benefits pursuant to the Hawaii Revised Statutes (HRS) § 386-8 (1976).[1] Additionally,

---

[1] HRS § 386-8 in relevant part reads:
§ 386-8 *Liability of third person.* When a work injury for which compensation is payable under this chapter has been sustained under circumstances creating in

CAL cross-claimed against Pan Am as follows: (a) that Hanagami's death was caused by Pan Am's negligence, and therefore, any judgment awarded against CAL should be reduced to the extent of any workers' compensation benefits paid; and (b) that CAL is entitled to be indemnified by Pan Am for any loss sustained by CAL due to Pan Am's wilful misconduct or wilful breach of duty pursuant to the Ground Handling Agreement entered into between CAL and Pan Am. Pan Am filed a motion for summary judgment on all of the foregoing cross-claims. The circuit court granted summary judgment in favor of Pan Am on all the cross-claims except as to cross-claim (b) which was denied. CAL, Unit Rig and Pan Am filed an interlocutory appeal of the circuit court's order. We affirm.

I.

Gary M. Hanagami was assigned to Pan Am's aircraft departure push-back and tow operations at the Honolulu International Airport at the time of his death on August 13, 1977. The push-back and tow operation is a procedure by which the departing aircraft is pushed away from the terminal and towed to a position from which the aircraft can taxi on its own power for departure. Pursuant to a Ground Handling Agreement between Pan Am and CAL, Pan Am provided CAL flights with various ground handling services including the push-back and tow service at the Honolulu Interna-

---

some person other than the employer or another employee of the employer acting in the course of his employment a legal liability to pay damages on account thereof, the injured employee or his dependents (hereinafter referred to collectively as the employee) may claim compensation under this chapter and recover damages from such third person.

If the employee commences an action against such third person . . . . The employer may, at any time before trial on the facts, join as party plaintiff.

If within nine months after the date of the personal injury the employee has not commenced an action against such third person, the employer, having paid or being liable for compensation under this chapter, shall be subrogated to the rights of the injured employee. Except as limited by chapter 657, the employee may at any time commence an action or join in any action commenced by the employer against such third person.

. . . . . .

If the action is prosecuted by the employee alone . . . . On application of the employer, the court shall allow as a first lien against the amount of the judgment for damages or settlement proceeds, the amount of the employer's expenditure for compensation, less his share of such expenses and attorney's fee.

tional Airport with its own equipment and employees. The tug used by Pan Am in its push-back and tow operations was manufactured by Unit Rig.

On August 13, 1977, Hanagami was a member of Pan Am's ground crew assigned to push-back and tow a departing CAL Boeing 747 jetliner. The push-back of the 747 jetliner from the terminal gate was accomplished without incident. However, while the jetliner was being towed forward by the Pan Am ground crew into departure position on the taxiway, Hanagami apparently fell off the rear of the tug and was crushed to death under the nose gear wheels of the towed jetliner.

During the push-back and tow operation, the flight crew in the cockpit of the 747 jetliner could not see the tug on the ground because the tug is located under the aircraft's nose. Consequently, the CAL flight crew was unaware of the accident until after it had occurred. The CAL flight crew first learned of the accident when the Pan Am ground crew, after stopping the tow operation, advised them by radio of the accident.

At the time of the accident, Hanagami was riding on the platform of the tug in violation of a Pan Am safety directive which required members of the ground crew either to ride in the cabs of the tug or to walk alongside the tug. In addition, the Airports Division's regulation of the Department of Transportation prohibited all vehicles in the airport operational area from carrying passengers in excess of their designated seating capacity. Testimony from ground crew personnel indicated that these directives were regularly violated because either the supervisory personnel failed to enforce these rules, or the ground crews simply ignored them.

On March 14, 1978, the Disability Compensation Division of the Department of Labor and Industrial Relations held that Hanagami was an employee of Pan Am at the time of the accident and awarded plaintiffs workers' compensation benefits arising out of Hanagami's death. Pan Am, through its insurer, paid workers' compensation to the plaintiffs pursuant to that decision.

## II.

Hawaii's workers' compensation law makes the payment of workers' compensation the employer's exclusive liability for work-

related injuries. HRS § 386-5 (1976) provides for this exclusive liability as follows:

§ 386-5 Exclusiveness of right to compensation. *The rights and remedies herein granted* to an employee or his dependents on account of a work injury suffered by him *shall exclude all other liability of the employer to* the employee, his legal representative, spouse, dependents, next of kin, or *anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury.* (Emphasis added.)

CAL and Unit Rig argue that *Pacheco v. Hilo Electric Light Co.*, 55 Haw. 375, 520 P.2d 62 (1974), and *Witt v. Jackson*, 57 Cal. 2d 57, 17 Cal. Rptr. 369, 366 P.2d 641 (1961), should control the outcome of this appeal. We disagree.

They contend that HRS § 386-5 does not foreclose their cross-claims to bar Pan Am from asserting its statutory workers' compensation reimbursement/lien rights pursuant to HRS § 386-8, nor does the statute disallow its right to reduce, to the extent of any workers' compensation benefits paid, any judgment that might be awarded against CAL.

Pan Am argues, on the other hand, that *Kamali v. Hawaiian Electric Co.*, 54 Haw. 153, 504 P.2d 861 (1972), is controlling and therefor, CAL'S and Unit Rig's claims are foreclosed. We agree.

A.

In *Pacheco,* an employee of the State of Hawaii, Stanley Pacheco (Pacheco), was injured when a sign owned and maintained by Hilo Electric Light Company, Ltd. (HELCO) collapsed and fell on his head while he was performing his duties by mowing grass on the shoulder of a state road. Pacheco and his wife (Pachecos) sued HELCO who then joined the State as a third party defendant. Pachecos claims were settled by a compromise settlement. HELCO and the State, however, mutually stipulated to proceed with a trial on the merits of count two. Count two of HELCO's third party complaint claimed that the State's alleged negligence precluded the State from asserting its right to recover the workers' compensation benefits already paid.

The court stated that count two was not based on a theory of contribution, but in substance the count sought a declaration of

HELCO's non-liability to the State. The court reasoned that count two should have been dismissed assuming that the rationale of *Kamali* extended that far, only if the court held that HRS § 386-5 immunizes employers from suits for any purpose by third party tortfeasors. The court then held that the State could not recover from HELCO the workers' compensation benefits already paid to Pacheco due to the State's own negligence; *not* on the basis of construing HRS § 386-5, but based on the stipulation entered between HELCO and the State wherein the State bound itself to a waiver of its right to recover from HELCO the workers' compensation benefits already paid in the event the State were found to be negligent.

In *Kamali*, the employer, Tanji House Movers, Ltd. (Tanji), was engaged in moving a house down Hekaha Street in Honolulu. An employee of Tanji, Joseph A. Kamali (Kamali), was stationed on top of the house to watch for low hanging wires or other obstructions. During the actual moving of the house, Kamali was severely injured when he came in contact with some 12,000 volt uninsulated electrical wires which crossed Hekaha Street. These wires were owned and maintained by defendant-third party complainant, Hawaiian Electric Company, Inc. (HECO). The wires were two and three feet lower than the height requirement prescribed by the Public Utilities Commission. Subsequent to the accident, Kamali brought suit against HECO who then brought a third party complaint against Tanji for indemnification or contribution.

The court's holding in *Kamali*, reflects the holdings of the great majority of jurisdictions. *State v. Wien Air Alaska, Inc.*, 619 P.2d 719 (Alaska 1980); *Downie v. Kent Products and the Home Indemnity Co.*, 122 Mich. App. 722, 333 N.W.2d 528 (1983); *State ex rel. Hillyard Chemical Co. v. Schoenlaub*, 610 S.W.2d 957 (Mo. 1981); *Tsarnas v. Jones & Laughlin Steel Corp.*, 488 Pa. 513, 412 A.2d 1094 (1980); *Cacchillo v. H. Leach Machinery Co.*, 111 R.I. 593, 305 A.2d 541 (1973); *Superior Commercial Carpet Service v. American Chain & Cable Co.*, 623 S.W.2d 747 (Tex. Ct. App. 1981); *Glass v. Stahl Specialty Co.*, 97 Wash. 2d 880, 652 P.2d 948 (1982). *See generally*, 2A A. Larson, *The Law of Workmen's Compensation* § 76.20 (1983).

In *Kamali*, the court held that "HRS § 386-5 clearly and unequivocally precludes all contribution by a third party against an employer on the theory that the employer was a joint tortfeasor." *Kamali*, 54 Haw. at 159, 504 P.2d at 865. The court further

acknowledged that HRS § 386-5 was a "clear expression of legislative intent to absolve the employer of *all liability save that imposed by statute.*" *Id.* at 157, 504 P.2d at 864 (emphasis added). "The purpose of such legislation is to achieve certainty — certainty that an employee will be compensated for all work injuries regardless of his negligence or fault; and certainty with regard to the amount for which the employer shall be liable." *Id.* at 157-58, 504 P.2d at 864. The court reasoned that anything to the contrary should be a matter for determination by the legislature. We concur.

## B.

CAL and Unit Rig argue that an employer should not be allowed to be reimbursed for its own wrong-doing; and "the third-party is entitled to have the judgment against him reduced by the amount of compensation paid to the injured employee if he can prove that the concurrent negligence of the employer contributed to the injuries suffered by the employee." *Witt v. Jackson,* 57 Cal. 2d at 71, 17 Cal. Rptr. at 377, 366 P.2d at 649. *See also Liberty Mutual Insurance Co. v. Adams,* 91 Idaho 151, 417 P.2d 417 (1966); *Brown v. Southern Ry. Co.,* 204 N.C. 668, 169 S.E. 419 (1933).

These holdings are in the minority and we join *Kamali* in rejecting these holdings.

## IV.

As to CAL's claim for indemnification from Pan Am, paragraphs 8.2 and 8.3 of the Ground Handling Agreement[2] are con-

---

[2] Paragraphs 8.2 and 8.3 of the Ground Handling Agreement provide as follows:

8.2 The Carrier hereby agrees to indemnify the Handling Company from and against all action, claims, proceedings, costs, losses, damages, charges and expenses which the Handling Company may sustain, incur or pay to third parties, other than the Company's servants or agents, by reason or arising out of any service rendered by the Handling Company under the provisions of this Agreement unless caused by wilful misconduct or wilful breach of duty on the part of the Handling Company or its servants or agents or negligence in the handling [sic] Company's operation of its own aircraft.

8.3 Where loss is to be borne by the Carrier in consequence of the indemnity in 8.2 hereof, the Carrier shall arrange for its Underwriters or Insurers to renounce their rights of recourse against the Handling Company except in cases where the loss has been caused by wilful misconduct or wilful breach of duty on the part of the Handling Company or its servants or agents as aforesaid or negligence in the Handling Company's operation of its own aircraft.

trolling. CAL argues that the agreement grants it a right of recourse against Pan Am where CAL sustains a loss which is caused by wilful misconduct or wilful breach of contract on the part of Pan Am. CAL further argues that there are genuine issues of material facts to be tried on the merits: (a) the intent of the parties as expressed in the indemnification provisions; (b) the respective roles played by Pan Am and CAL in drafting the agreement; and (c) whether Pan Am's conduct amounted to wilful misconduct and/or wilful breach of duty. Pan Am argues that the contract was drafted by CAL and that there is no factual dispute as to the legal effect the parties intended to give paragraphs 8.2 and 8.3. Pan Am asserts that the only issue is whether the construction and legal effect of the contract is that Pan Am is obligated to indemnify CAL should it be shown that Hanagami's injuries were caused by the wilful misconduct or wilful breach of duty on the part of Pan Am or its servants. Pan Am contends that the clear unambiguous language of the contract does not require it to indemnify CAL.

As a general rule, the construction and legal effect to be given a contract is a question of law. *Reed & Martin, Inc. v. City and County of Honolulu,* 50 Haw. 347, 440 P.2d 526 (1968); *Bishop Trust Co. v. Central Union Church,* 3 Haw. App. 624, 656 P.2d 1353 (1983).

> When the terms of a contract are definite and unambiguous there is no room for interpretation. It is only when the language used by the parties leaves some doubt as to the meaning and intention that the courts will apply the rules of construction and interpretation in an effort to ascertain the intention of the parties to the contract.

*Hackfeld and Co. v. Grossman,* 13 Haw. 725, 729 (1902) (quoted in *DiTullio v. Hawaiian Insurance & Guaranty Co.,* 1 Haw. App. 149, 155, 616 P.2d 221, 226 (1980)). The intent of the parties is a question of fact, and " [i]nasmuch as the determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable men might differ, summary judgment often will be an inappropriate means of resolving an issue of that character." *Bishop Trust Co.,* 3 Haw. App. at 628-29, 656 P.2d at 1356 (citations omitted).

We do not find the terms of paragraphs 8.2 and 8.3 to be so definite and unambiguous that there is no room for interpretation.

Affirmed and remanded for further proceedings.

*Burnham H. Greeley (Dan T. Kochi,* and *Jerold T. Matayoshi* with him on the briefs; *Carlsmith, Carlsmith, Wichman* and *Case* of counsel) for defendant-appellant, cross-appellee Pan American World Airways, Inc.

*Michael K. Kawahara (Vernon F. L. Char* and *Steven H. Levinson* with him on the briefs; *Damon, Key, Char* and *Bocken* of counsel) for defendant-appellant, cross-appellee, China Airlines, Ltd.

*Howard F. McPheeters (Gary L. Miller* with him on the briefs; *Burke, Ashford, Sakai, McPheeters, Bordner* and *Gilardy* of counsel) for defendant-appellant, cross-appellee Unit Rig & Equipment Company.