TRADERS TRAVEL INTERNATIONAL, INC., a Hawaii corporation, Plaintiff-Appellee, *v.* CHARLES E. HOWSER, Defendant-Appellant, and CHARKATT, INC., a Hawaii corporation, Defendant, *v.* FLY ON TRAVEL SERVICE, INC., a Hawaii corporation; SAMUEL H. S. WONG, SANDRA S. M. POON, ADNA C. F. FU, LING YEE SO WONG, RITA K. C. WONG, and POON KWOK HUNG, Third-Party Defendants

NO. 12313

(CIVIL NO. 80818)

APRIL 21, 1988

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY HAYASHI, J.

Defendant-Appellant Charles E. Howser (hereinafter "Howser") appeals the order garnishing $37,389.07 of the $51,499.25 bank account held by him, his wife, and their two daughters. The trial court had held that creditor Plaintiff-Appellee Traders Travel International, Inc. (hereinafter "Traders") could garnish most of the joint account to satisfy a judgment against Howser. He contends that the trial court erred because 1) the account was a tenancy by the entirety possessed by him and his wife

which could not be garnished; or 2) if the funds could be confiscated, then Traders could only seize his one-fourth equitable interest. We disagree and affirm the judgment.

## I.

### BACKGROUND FACTS.

The procedural facts are not disputed. This case arose out of Howser's default on a $25,000 note plus interest owed to Traders. After a 1985 bench trial, Traders obtained judgment against Howser which was affirmed on appeal by this court.[1]

On remand, Pioneer Federal Savings Bank (hereinafter "Pioneer") disclosed that it had a $51,499.25 NOW account held by Howser, his wife Ardeth L. Howser, and their daughters Charletta L. Bell plus Kahalaomapuana Howser. On October 31, 1986, the trial court ordered $37,389.07 ($32,258.94 judgment, $4,814.44 interest, plus $315.69 costs) garnished.

On November 10, 1986, Howser moved for reconsideration arguing, *inter alia,* that any garnishment of the account should be limited to his one-fourth equitable interest. Traders answered that the entire joint account was subject to forfeiture: since Howser could withdraw all the funds, his creditor can also seize the whole account to satisfy a judgment.

---

[1] Traders filed suit on December 21, 1983 against Defendant Charkatt, Inc. and president-majority shareholder Howser for the $25,000 note executed on April 30, 1982. Howser denied liability, asserted a counterclaim against Traders, and sued Third-Party Defendants Fly On Travel Service, Inc., *et al.* (hereinafter "Fly On"). After the parties' repudiations of financial responsibility, the trial court ruled against Howser on all the claims, awarded Traders $32,258.94 plus attorney's fees as well as costs, and gave Fly On $9,616.

On appeal, this court affirmed the judgment and remanded the case in *Traders Travel International, Inc. v. Charkatt, Inc.,* No. 11074 (Haw. July 30, 1986) (memo. op.), because Howser's counsel had neglected to provide record citations to document the purported errors in the trial transcript. Fly On was not involved in the remand proceedings and is not a party to this appeal.

But in a December 12, 1986 supplemental memorandum, Howser declared that the account was held by him and his wife as a tenancy by the entirety and was thus not subject to a garnishment. His affidavit stated:

2. The NOW account at Pioneer Federal Savings Bank was established by my wife and I as an account that we both owned. *It is held in the same manner as the interest that we have in our home, a tenancy by the entirety.* My daughters names were added to the account so that in the event my wife and I died together, they could have access to the account. The account itself is one with my wife and is held as tenants by the entirety.

Record Volume II at 50 (emphasis added).

Based on Howser's representation, the trial court on January 14, 1987 set aside the garnishment order. An amended order also issued on January 29, 1987.

However on February 9, 1987, Traders sought reconsideration based on mistake because 1) according to the Pioneer signature card signed by Howser and his wife, a joint account was established; so 2) Howser misstated that a tenancy by the entirety existed. Howser responded that 1) notwithstanding the signature card, the legal effect of spouses holding a joint bank account is a tenancy by the entirety; and 2) even if only a joint account was set up, a creditor can only garnish the debtor's proportionate share of the account.

On June 9, 1987, the trial court granted Traders reconsideration first determining that the disputed funds were placed in a joint account so were not held as a tenancy by the entirety. The trial court then ruled:

2. A joint tenant has an undivided interest in the whole. *Sawada v. Endo,* 57 H. 608 (1977); *Thurston v. Allen,* 8 H. 392 (1891).

3. A judgment creditor of one joint tenant can execute upon the entire bank or savings account. 30 AmJur 24 [sic] Executions § 800 (1967).

4. *The NOW Account held at garnishee PIONEER is subject to the individual claims of Defendant HOWSER's creditors.*

*Id.* at 130 (emphasis added).

This appeal then followed.

## II.

### QUESTIONS PRESENTED.

We will address the issues posed as follows:

1. Whether the trial court erred by ruling that Howser (and his wife) had established a joint account, not a tenancy by the entirety? NO.

2. Whether the trial court erred by not restricting Traders' garnishment to Howser's purported one-fourth equitable interest in the account? NO.

## III.

### NATURE OF HOWSER'S ACCOUNT.

Howser maintains that he and his wife established an ungarnishable tenancy by the entirety in their bank account. Traders counters that the clear language of the Pioneer signature card conclusively determines that there was only a joint account.

A tenancy by the entirety is a unique form of ownership in which both spouses are jointly seized of property such that neither spouse can convey an interest alone nor can one spouse's creditor attach the property to satisfy a debt. *See In re Trust Created by Declaration of Trust of Dean, Dated November 14, 1944, and Subsequently Amended,* 47 Haw. 629, 394 P.2d 432 (1964). And although a tenancy by the entirety can exist in personal property, it must manifestly appear that the spouses intended to create such an estate. *In re Estate of Au,* 59 Haw. 474, 583 P.2d 966 (1978); *see* Hawaii Revised Statutes (hereinafter "HRS") §§ 509-1 and 509-2 (1985).[2]

---

[2] These statutes read (emphasis added):

§ *509-1 Construed as estates in common, when.* All grants, conveyances, and devises of land, or of any interest therein, made to two or more persons, shall be construed to create estates in common and not in joint tenancy or by entirety, *unless it manifestly appears from the tenor of the instrument that it was intended to create an estate in joint tenancy or by entirety;* provided that this section shall not apply to grants, conveyances, or devises to personal representatives or trustees.

Here, the unambiguous signature card clearly evidences that Howser and his family set up a joint account, analogous to a joint tenancy, and not a tenancy by the entirety. *See* HRS § 403-134 (1985).[3] The plain and ordinary signature card language (which essentially contains contract terms for deposits, withdrawals, and liability) is dispositive, and no real question of intent exists. *See Hanagami v. China Airlines, Ltd.,* 67 Haw. 357, 688 P.2d 1139 (1984) (per curiam); *Bishop Trust Co. v. Central Union Church of Honolulu,* 3 Haw. App. 624, 656 P.2d 1353 (1983). Had Howser genuinely wanted to create a tenancy by the entirety, he and his wife should have so indicated on the documents provided by Pioneer. No such estate therefore existed.

Hence, Howser cannot use the tenancy by the entirety doctrine to evade judgment creditor Traders' garnishment. *See Sawada v. Endo,* 57 Haw. 608, 561 P.2d 1291 (1977).

Additionally, a tenancy by the entirety must be held exclusively by married spouses who alone possess the mutual right of survivorship. *See e.g., In re Estate of Ikuta,* 64 Haw. 236, 639 P.2d 400 (1981).

---

§ *509-2 Creation of joint tenancy, tenancy by the entirety, and tenancy in common.* Land, or any interest therein, *or any other type of property or property rights or interests or interest therein,* may be conveyed by a person to himself and another or others as joint tenants, or by a person to himself and his spouse, or by spouses to themselves, as tenants by the entirety, or by joint tenants to themselves and another or others as joint tenants, or tenants in common to themselves or to themselves and another or others as joint tenants, or by tenants by the entirety to themselves or themselves and another or others as joint tenants or as tenants in common, or by one tenant by the entirety to his spouse of all of his interest or interests, without the necessity of conveying through a third party, and each such instrument shall be construed as validly creating a joint tenancy, tenancy by the entirety, tenancy in common, or single ownership, as the case may be, *if the tenor of the instrument manifestly indicates such intention.*

[3] This provision states (emphasis added):

§ *403-134 Joint deposits.* When a deposit with a bank is made by any person in the names of the depositor and another person or persons, and in form to be paid to either, or the survivor or survivors, of them, deposits thereupon and any additions thereto made by either, or any, of the persons, shall, upon the making thereof, *become the property of such persons, as joint tenants,* and the deposit and deposits, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to either, or any, of the persons, during the lifetime of all or any, or to the survivor, or survivors, after the death of one or more of them. The payments, and the receipts or acquittances of the one to whom the payments are made, shall be a valid and sufficient release and discharge to the bank for all payments so made on account thereof.

Should the spouses divorce, the property becomes a tenancy in common. *Vaughan v. Williamson,* 1 Haw. App. 496, 621 P.2d 387 (1980).

In this case, by contrast, Howser's daughters are also joint title holders to the account. Because a tenancy by the entirety cannot include the spouses' children, *see e.g., Corey v. Jonathan Manor, Inc.,* 59 Haw. 277, 580 P.2d 843 (1978) (per curiam), *Ikegami v. Ikegami,* 1 Haw. App. 505, 620 P.2d 768 (1980), this is more evidence that no valid tenancy by the entirety was present.

### IV.

### *GARNISHMENT LIMITATION.*

Howser next advances that, should garnishment be proper, then the amount seized ought to be limited to his one-fourth equitable interest in the account. Traders replies that, just as Howser was entitled to use any or all the funds, so too can his judgment creditor levy any quantity to meet his debt.

Most courts agree that judgment creditors can garnish the joint bank account of a debtor (although other account holders exist) but have split over the degree of vulnerability. The majority of jurisdictions rule that joint accounts may be garnished only to the extent of the debtor's equitable interest. Note, *Joint Bank Account as Subject of Attachment, Garnishment, or Execution by Creditor of One of the Joint Depositors,* 11 A.L.R.3d 1465, 1475 (1967 and Supp. 1987).

Of these states following the majority view, California, Illinois, New Jersey, New York, and Oklahoma presume that the debtor owns the entire account such that the depositors bear the burden of proving otherwise. Other courts recognize a presumption that all the depositors possess an equal ownership but must demonstrate the actual amount owned by the debtor. Finally, a few states require the judgment creditor to show that the debtor solely owns the entire account. *Id.* at 1476-77.

We now adopt the majority view that the debtor presumptively holds the entire joint bank account but may disprove this supposition to establish his or her actual equitable interest. In this way, the debtor, at an evidentiary hearing, may prevent the judgment cred-

itor from seizing more than the debtor's fair share of the account. The judgment creditor, moreover, may introduce its own evidence on this issue.[4] Should the debtor fail to establish by a preponderance of the evidence that he or she does not possess the whole joint account, however, then the judgment creditor may confiscate all the deposits therein to satisfy the garnishment. *Id.* at 1476; *see Holton v. Laucomer,* 54 Haw. 141, 504 P.2d 872 (1972).

Here, Howser never submitted any evidence, that his equitable interest was only one-fourth of the funds, in the various documents filed or at the hearings on the reconsideration motions. *See* Transcripts of December 16, 1986 at 2-5, and March 18, 1987 at 5-7. There is nothing in the record to show how much Howser actually contributed to the account, and he has not pointed to anything which demonstrates that garnishing about 72.6% of the funds is inherently unfair. *See* HRS § 641-2 (1985).[5] This court is not obligated to review the entire record to verify an appellant's undocumented contentions. *See International Brotherhood of Electrical Workers, Local 1357 v. Hawaiian Telephone Co.,* 68 Haw. ____, 713 P.2d 943 (1986).

## V.

### CONCLUSION.

Based on the foregoing reasoning and Howser's failure to produce evidence that the garnishment by Traders was unjust, the judgment is hereby affirmed and the case is remanded for proceedings not inconsistent with this opinion.

*Philip D. Bogetto,* for defendant-appellant.

---

[4] We leave it to the trial court's discretion to determine what relevant evidence may be admitted. *See Kaeo v. Davis,* 68 Haw. ____, 719 P.2d 387 (1986); *Monlux v. General Motors Corp.,* 68 Haw. ____, 714 P.2d 930 (1986).

[5] For example, it is likely that Howser and his wife deposited all the money and included their daughters as account holders for survivorship purposes such that the daughters never contributed any money. Or, it is just as possible that Howser, the president and shareholder of a corporation, gave Pioneer all the money while his wife put in nothing.

*Blake T. Okimoto (Matthew S. K. Pyun, Jr.,* and *Alvin G. Kaohu, Jr.,* with him on the brief; *Pyun & Okimoto,* of counsel), for plaintiff-appellee.

## CONCURRING OPINION OF WAKATSUKI, J.

I concur in affirming the trial court's judgment, but I do not agree with Part IV of the majority's opinion. In my view, the better policy is to hold that the creditor is entitled to garnishee the entire amount in the joint account (subject, of course, to the amount of the judgment against the debtor) without regard to each depositor's "equitable interest."

Here, any one of those named on the joint account has unconditional power to withdraw all or any part of the monies held in the account. HRS § 403-134 (1985). If Charles Howser chose to voluntarily extinguish his adjudged debt to Traders Travel by drawing a check for $37,389.07 or withdrawing that amount from the account in question, Pioneer Federal would have been obligated to honor the check or the demand for withdrawal. HRS § 490:4-402 (1985). Howser's wife and his daughters could not have prevented Pioneer Federal from honoring the transaction by claiming that Howser was taking more than his equitable share. The result should not be any different merely because Howser resists voluntary payment and must be compelled through garnishment proceedings to discharge his debt. *See Park Enterprises v. Trach,* 233 Minn. 467, 47 N.W.2d 194 (1951).

The Supreme Court of Minnesota stated that by entering into a joint bank account, such as we have here, the joint account holders

> have virtually declared that they do not wish to be inconvenienced by any strict accountability as between themselves . . . . [A]ny attempt to base the extent of garnishment upon the respective amounts of the account owned by each depositor will compel courts and juries to grope with problems which the depositors themselves have declared to be of no consequence. Let them abide the results which flow from their own declared purposes.

*Park Enterprises v. Trach,* 233 Minn. at 472, 47 N.W.2d at 197.